**UNITED STATES of America, Appellant,**

v.

**Anna B. HALLAM, Appellee.**

**No. 6886.**

United States Court of Appeals Tenth Circuit.

May 25, 1962.

**621**

Carolyn R. Just, Atty., Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson, Attys., Dept. of Justice, Washington, D. C., and John M. Imel, U. S. Atty., Tulsa, Okl., with her on the brief), for appellant.

James O. Ellison, of Boone & Ellison, Tulsa, Okl. (J. Eben Hart, Oklahoma City, Okl., with him on the brief), for appellee.

Before MURRAH, Chief Judge, and PICKETT and HILL, Circuit Judges.

PICKETT, Circuit Judge.

 This action was brought to recover income taxes for the years 1953, 1954 and 1955 which were alleged to have been erroneously refunded to the defendant, Anna B. Hallam, a full-blood Quapaw Indian. The income in question was derived from restricted, allotted Indian lands in the form of rentals, royalties and the proceeds from the sale of chats. We agree with the trial court that the income was not taxable.

The refund was made following the decision of the Supreme Court in Squire v. Capoeman, 351 U.S. 1, 76 S.Ct. 611, 100 L.Ed. 883, in which it was held that income accruing to a noncompetent Indian from lands allotted under the General Allotment Act (24 Stat. 388, 25 U.S.C.A. § 331 et seq.) was not subject to federal income tax. There the court said:

"We agree with the Government that Indians are citizens and that in ordinary affairs of life, not governed by treaties or remedial legislation, they are subject to the payment of income taxes as are other citizens. We also agree that, to be valid, exemptions to tax laws should be clearly expressed. But we cannot agree that taxability of respondents in these circumstances is unaffected by the treaty, the trust patent or the Allotment Act.

"The courts below held that imposition of the tax here in question is inconsistent with the Government's promise to transfer the fee 'free of all charge or incumbrance whatsoever.' Although this statutory provision is not expressly couched in terms of nontaxability, this Court has said that

'Doubtful expressions are to be resolved in favor of the weak and defenseless people who are the wards of the nation, dependent upon its protection and good faith. Hence, in the words of Chief Justice Marshall,

'The language used in treaties with the Indians should never be construed to their prejudice. If words be made use of, which are susceptible of a more extended meaning than their plain import, as connected with the tenor of the treaty, they should be considered as used only in the latter sense.' Worcester v. The State of Georgia, 6 Pet. 515, 582 [8 L.Ed. 843]. Carpenter v. Shaw, 280 U.S. 363, 367 [50 S.Ct. 121, 74 L.Ed. 478].

"Thus, the general words 'charge or incumbrance' might well be sufficient to include taxation. But Congress, in an amendment to the General Allotment Act, gave additional force to respondents' position. Section 6 of that Act was amended to include a proviso—

'That the Secretary of the Interior may, in his discretion, and he is authorized, whenever he shall be satisfied that any Indian allottee is competent and capable of managing his or her affairs at any time to cause to be issued to such allottee a patent in fee simple, and thereafter all restrictions as to sale, incumbrance, or taxation of said land shall be removed and said land shall not be liable to the satisfaction of any debt contracted prior to the issuing of such patent * * *.' " (Footnote omitted.) Squire v. Capoeman, 351 U.S. 1, 6–7, 76 S.Ct. 611, 614–615.

Having made these refunds on the authority of Squire v. Capoeman, supra, the government, relying upon a strictly technical interpretation of pertinent statutes, now seeks to distinguish that case. The gist of its argument is that allotments to the Quapaws were treated by Congress in separate legislation, and therefore, the provision of Section 5 of the General Allotment Act upon which the Supreme Court partially relied in Squire v. Capoeman, supra, to hold that Congress did not intend to tax the income derived directly from allotted lands, is not applicable to Quapaw allotments. The General Allotment Act was passed in 1887. In 1893 the Quapaw Tribe, through its General Council, adopted an act providing for the allotment of its lands to the individual members of the tribe. In 1895 Congress ratified and confirmed the system of allotments approved by the Quapaw Tribe, and authorized the Secretary of the Interior to issue patents to the allottees in accordance therewith, and provided that "said allotments shall be inalienable for a period of twenty-five years from and after the date

of said patents * * *." Act of Mar. 2, 1895, 28 Stat. 876, 907.

We find no merit in the contention that the General Allotment Act is not applicable to the Quapaws or that members of that tribe should be treated differently than the members of any other tribe of Indians who were included within its provisions. Section 8 of the General Allotment Act (24 Stat. 388, 391, 25 U.S.C.A. § 339), provided specifically that the Act should not extend to the territory occupied by ten different tribes in the "Indian Territory." The Quapaws were not excluded. The members of the tribe were wards of the government, dependent upon its protection and good faith; their lands were not subject to alienation; and the wardship was extended after the expiration of the 25 year period provided for in the statute. Act of Mar. 3, 1921, 41 Stat. 1225, 1248. The exception clause in the 1906 amendment to Section 6 of the General Allotment Act (Act of May 8, 1906, 34 Stat. 182), even if broad enough to exclude the Quapaws from the amendment, could not except them from the General Allotment Act.

Furthermore, Congress has enacted a statute providing that "all existing restrictions, tax limitations, and exemptions affecting lands of Quapaw Indians in Oklahoma be, and they are hereby, extended for a further period of twenty-five years from the date on which such restrictions, limitations, and exemptions would otherwise expire * * *." Act of July 27, 1939, 53 Stat. 1127. This provision is similar in tenor to the amendment to Section 6 of the General Allotment Act which was said in the case of Squire v. Capoeman, supra, to give additional force to the taxpayer's position. The implication that income from restricted Quapaw allotments should be free from federal income tax until the restrictions are removed is equally apparent.

 It is quite clear to us, considering the provisions of the General Allotment Act and the special statutes affecting the Quapaws, that Congress intended that so long as they continued in their

status as wards of the United States, their allotted lands should be treated in the same manner as those of all other Indians encompassed by the General Allotment Act, and that when a Quapaw allottee was determined to be competent and capable of managing his or her affairs, that person should have a title free from any "charge or incumbrance." Squire v. Capoeman, supra, is not distinguishable in principle.

Affirmed.