Juanita D. NASH, Ruby M. Fox, Robert DeWitt, LeRoy DeWitt, Doyle E. DeWitt, Charles DeWitt, Mae Belle K. Dixon, Plaintiffs,

v.

Earl R. WISEMAN, District Director of Internal Revenue, Defendant.

Civ. No. 8536.

United States District Court
W. D. Oklahoma,
Civil Division.

Dec. 20, 1963.

Houston Bus Hill, Howell & Stinchecum, Oklahoma City, Okla., for plaintiffs.

B. Andrew Potter, U. S. Atty., Leonard L. Ralston, Asst. U. S. Atty., Oklahoma City, Okla., Louis F. Oberdorfer, Asst. Atty. Gen., Tax Div. U. S. Dept. of Justice, Washington, D. C., for defendant.

RIZLEY, District Judge.

The above numbered and styled cause is before this Court on the motions for summary judgment filed by both parties pursuant to a stipulation filed herein. From the stipulation and briefs filed by the respective parties, it is clear that no genuine issue exists between the plaintiffs and the defendant as to any material fact.

This suit arises under the Internal Revenue Code of 1939 and jurisdiction is conferred on this Court by 28 U.S.C. § 1346(a) (1).

The plaintiffs in this action are all noncompetent Pottawatomie Indians who are wards of the United States acting by and through the Secretary of Interior and are under the jurisdiction of the Area Director of the Bureau of Indian Affairs at Anadarko, Oklahoma. The defendant is the District Director of Internal Revenue.

Grace Riordan, a non-competent Pottawatomie Indian, died intestate on June 10, 1952, owning and possessing at the time of her death certain lands and property, all being held under trust patents by the United States. The plaintiffs in this action are heirs of Grace Riordan.

Pursuant to her death, the Area Director of the Bureau of Indian Affairs prepared and filed Federal Estate Tax Returns on behalf of the estate of Grace

Riordan on or about January 27, 1953, and on July 19, 1954 paid taxes on the estate in the sum of $74,684.00. The property included in the taxable estate consisted of the following: The allotted land of the decedent; the decedent's inherited portion of the allotted property of her deceased mother; inherited portion of deceased brother's estate; inherited portion of the allotted property of William McLane, deceased; trust fund cash arising from the previously mentioned properties; and a television set purchased from decedent's trust fund account.

In the months of September, October and November of 1956 the plaintiffs, with the exception of Ruby M. Fox and Charles DeWitt, filed claims for refund, claiming that the entire estate of Grace Riordan was exempt from the federal estate tax because the estate was composed of lands allotted to non-competent Indians.

On January 27, 1959, a refund was allowed for the tax paid on the value of the decedent's own allotted property and the refund on the remainder of the tax paid was denied in the sum of $72,845.48.

Following the denial of the refund and the refusal of the Area Director to maintain this action, the plaintiffs brought this suit. The Complaint has been amended to show that the Area Director refused to bring the action and that the plaintiffs were informed that it was their responsibility to institute their own law suit and retain their own attorney.

In disposing of this case we are of the opinion that two major issues must be decided. (1) Are inherited allotted lands and trust fund cash being held in trust by the United States Government under the General Allotment Act of February 8, 1887, as amended, exempt from federal estate taxes when a patent in fee simple had not been issued to the deceased Indian prior to her death or to her restricted non-competent Indian heirs? (2) And even though the property is exempt, is this action barred by the statute of limitations found in the Internal Revenue Code of 1939?

The first issue presented is whether property inherited by the decedent, and funds derived therefrom, are subject, upon her death, to federal estate taxes. The inherited property being allotted property of Indian allottees and wards of the United States Government under the General Allotment Act of February 8, 1887, as amended, at the time of their deaths, and the same inherited property passed from her estate to her heirs, all of whom are wards of the United States Government under said Allotment Act, and none of said inherited property having been conveyed by patent in fee simple by the United States Government, but has at all times been held by the United States Government in trust for future conveyance under said Allotment Act.

The Government's contention is that there is a difference, for federal estate tax purposes, between the allotted estate of a restricted Indian and the inherited estate of a restricted Indian, the whole estate being under the control of the United States Government by virtue of a trust. They base their contention on the following points:

1. No obligation exists since the decedent was not the original allottee of the properties in question, but acquired such properties by inheritance, thusly the rationale of Squire v. Capoeman, 351 U.S. 1, 76 S.Ct. 611, 100 L.Ed. 883, does not apply.

2. The federal estate tax is an "excise tax" on the transfer of property at death and is not a tax on the property itself; thusly the principle of Landman v. Commissioner, 10 Cir., 123 F.2d 787, is applicable.

The Government in Point 1 seems to be contending that if the income in the Squire case had come from the sale of timber from land which had been inherited but still restricted, then the assessment of an income tax would have been appropriate. It will suffice to say that the Service has not taken this view.

"As long as the Indian land is still allotted and restricted and held

in trust by the United States, the income directly derived from it is tax-exempt whether held by the patent holder to whom it was directly allotted or by a patent holder who took it by inheritance. * * *" 1 Mertens, Law of Federal Income Taxation, Sec. 6A.16, p. 72.

Neither do we think that a close reading of the opinion justifies such a conclusion. The Government argued that the 1906 amendment to Section 6 of the General Allotment Act, which provided, among other things, that "all restrictions as to sale, incumbrance, or taxation of said land shall be removed", was directed solely at permitting state and local taxation after a transfer in fee. In answer the Supreme Court stated:

"* * *, but there is no indication in the legislative history of the amendment that it was to be so limited. The fact that this amendment antedated the federal income tax by 10 years also seems irrelevant. The literal language of the proviso evinces a congressional intent to subject an Indian allotment to all taxes only after a patent in fee is issued to the allottee. This, in turn, implies that, until such time as the patent is issued, the allotment shall be free from all taxes, both those in being and those which might in the future be enacted."

We, therefore, conclude that the most important factor to be considered is whether or not the fee simple patent has been issued to the particular property involved. In other words, if the patent has been issued, then the allotment is subject to all taxes, and if no patent has been issued, then the allotment is subject to no taxes.

In Big Eagle v. United States, 300 F. 2d 765 (Ct.Cl., 1962), the issue was whether royalty income from Osage tribal mineral deposits credited to the individual trust accounts of noncompetent Osage Indians was exempt from federal income tax. The facts showed that the income came from both allotted and inherited lands. The Court held that the income was not subject to the tax because the Osage Allotment Act said "[a]ll royalties and bonuses shall be turned over" to each respective Indian. The Court said in answer to the Government attorney's argument that Squire v. Capoeman, supra, did not help the Osage Indians here because the Osage Allotment Act has no such language as the General Allotment Act:

"This may be the letter but not the spirit of Capoeman which, like Blackbird (Mary Blackbird v. Com'r, 38 F.2d 976 (10th Cir., 1930), holds that the language of the Federal income tax law, broad as it is, does not extend to trust land income of noncompetent Indians even though there is no 'definitely expressed' exemption in the tax law. As Justice Murphy said in Oklahoma Tax Commission v. United States, 319 U.S. 598, 623, 63 S.Ct. 1284, 1296, 87 L.Ed. 1612:

"'* * * It is immaterial that the legislative history of the Act is silent with regard to the tax status of Indian funds. We are dealing not with a word, nor with an act, but with a course of history.' "

In conclusion the Court said:

"Since 1906 Congress has habitually defined those situations in which there should be no tax exemption for Indians. It has not at any time said that income from noncompetent Osage head rights should be subject to Federal income tax. If this is what it wanted it has had a clear opportunity on several occasions to say so since Blackbird in 1930. Its silence is conclusive. It follows that plaintiffs are entitled to recover."

Other Federal Courts have taken the same basic approach as the Court did in the Big Eagle case; that is, the Squire case meant just what it said when it said "all taxes" and that since the tax laws are construed liberally against noncompetent Indians, then it necessarily

follows that Congressional silence is conclusive. See Kirkwood v. Arenas, 243 F.2d 863 (9th Cir., 1957) ; United States v. Hallam, 304 F.2d 620 (10th Cir., 1962) ; Freeman P. Walker, 37 T.Ct. 962 (1962).

It seems appropriate to quote from the latest case from our Circuit, United States v. Hallam, supra, Judge Pickett speaking for the Court:

> "It is quite clear to us, considering the provisions of the General Allotment Act and the special statutes affecting the Quapaws, that Congress intended that so long as they continued in their status as wards of the United States, their allotted lands should be treated in the same manner as those of all other Indians encompassed by the General Allotment Act, and that when a Quapaw allottee was determined to be competent and capable of managing his or her affairs, that person should have a title free from any 'charge or incumbrance.' Squire v. Capoeman, supra, is not distinguishable in principle."

The Court held that income derived from restricted, allotted Indian lands, in form of rentals, royalties and proceeds from sale of chats, was not taxable.

■ The Government in Point 2 relies on Landman v. Commissioner, supra, which held the 1926 federal estate tax applicable to the estate of a restricted Creek Indian because there was no exemption to be found in the "agreements and acts of Congress relating to the affairs of the Creek Indians." This case is distinguishable both on its facts and its law. The Creeks were not subject to the General Allotment Act, being one of the Five Civilized Tribes, but were subject to their own special legislation. The General Allotment Act, as amended, has now been interpreted and construed by the Supreme Court to mean that an Indian allotted land under said act will not be subject to any tax until a fee simple patent has been issued. Squire v. Capoeman, supra. Therefore, the agreements and acts of Congress relating to the Pot-

tawatomie Indians have been construed to give said Indians an exemption to "all taxes".

In our opinion the refund should be granted because "Squire v. Capoeman, supra, is not distinguishable in principle". United States v. Hallam, supra.

■ Finally the Service contends that this Court is without jurisdiction of the subject matter by reason of Sec. 910 of the Internal Revenue Code of 1939. Sec. 910 as pertinent hereto provides:

> "All claims for the refunding of the tax imposed by this subchapter alleged to have been erroneously or illegally assessed or collected must be presented to the Commissioner within three (3) years next after the payment of such tax. * * * "

All of the claims for refund in the case at bar were made after the three-year period provided for in the statute had run and thus were not presented in accordance with Sec. 910.

The Service cites the case of Landman v. Alexander (E.D.Okl.) 26 F.Supp. 752, appeal dismissed 10 Cir., 105 F.2d 1018, as controlling this question. That case held the failure to file the request for refund was fatal when not done within the statutory period of limitation and that it was a condition precedent for the maintenance of the suit and is applicable to members of the Indian tribes, as well as other persons.

The above Court, in reaching its decision in the Landman case, relied upon the cases of United States v. Richards (8th Cir., 1928), 27 F.2d 284, and Superintendent of Five Civilized Tribes v. Commissioner of Internal Revenue, 295 U.S. 418, 55 S.Ct. 820, 79 L.Ed. 1517. We are of the opinion that neither case supports the conclusion reached in the Landman case.

In the Richards case recovery was not permitted because no refund claim had been filed within the time established therefor by law, but the case can be distinguished by reason of the fact that the Choctaw Indian in that case was unrestricted and not a ward of the United

States Government. If Richards, the Choctaw Indian, had been a restricted Indian, as the decedent was in the case at bar, there is a clear implication in the Court's opinion that a different result would have been reached. The Court said:

> " * * * Any relation of guardianship that may have previously existed, was terminated we think by this act * * *." (Under the Act of May 27, 1908, 35 Stat. 312, all restrictions on the allotment of this Choctaw Indian were removed and he became the full owner subject to no control by the Government).

The Court then makes it clear that no exception to the statute exists merely "because Richards was then and is now a member of the Choctaw Tribe". To us there is a clear implication from this language of the Court that if Richards had still been a restricted Choctaw Indian, then the statute would have had no application.

In the Superintendent of Five Civilized Tribes case, the Supreme Court held that the "income derived from investment of surplus income from land," or income on income, was subject to the income tax. This case has no bearing on the present case because the tax assessed in the case at bar was clearly erroneously collected, while the tax in the above case was correctly assessed and collected. The Court in the Landman case seemed to have misunderstood the holding of the Supreme Court in the above case and stated:

> " * * * The Supreme Court of the United States * * * has held that the income of a fullblood member of the Indian tribes from his restricted allotment is subject to the payment of income tax; * * *."

We submit that this case is no authority for the proposition which the Court stated, nor for the conclusion which the Court reached. See Squire v. Capoeman, supra.

Another case which is pertinent by analogy is Choteau v. Burnet, 283 U.S. 691, 51 S.Ct. 598, 75 L.Ed. 1353, which held only that a competent Indian, who had unrestricted control over lands and income therefrom, was not exempt from income tax solely because of his status as an Indian. Such a tax is specifically authorized by Sec. 6 of the General Allotment Act. It is logical to reason from this case that the converse is true; that is, if we had a noncompetent Indian whose land was restricted, he would not be subject to the income tax except on his income on income. See Squire v. Capoeman, supra.

Therefore, we are of the opinion that the Landman case should not be followed and that the law should be to the effect that "a restricted Indian is a ward of the Government and a refund claim can be filed for such a one at any time." 10 Mertens, Law of Federal Income Taxation (1958), Sec. 58A.06, note 54, pp. 22–23; 34 Op.Atty.Gen. 302 (1924).