Joseph **DANEY** and Bertha Daney,
Plaintiffs,

v.

**UNITED STATES** of America,
Defendants.

Civ. A. No. W–3046.

United States District Court
D. Kansas.

Oct. 12, 1965.

Barefoot, Moler, Bohanon & Barth, Oklahoma City, Okl., and Cooper, Esco, Cooper & Loyd, Wichita, Kan., for plaintiffs.

Newell A. George, U. S. Dist. Atty., Topeka, Kan., Louis F. Oberdorfer, Asst. Atty. Gen., Giora Ben-Horin, C. Moxley Featherston, and Jerome Fink, Trial Section, Tax Div., Dept. of Justice, Washington, D. C., for defendants.

WESLEY E. BROWN, District Judge.

This is a civil suit brought to recover a sum certain, plus interest, alleged to have been wrongly taxed and collected by defendant on income received in 1958 by plaintiff Joseph Daney in the form of a cash bonus paid for the execution of an oil and gas lease. Plaintiff Bertha Daney is a party to this suit only because the Daneys filed a joint return for the calendar year 1958. The transaction involved occurred in 1958; at that time and at all pertinent times, plaintiff Joseph Daney was a noncompetent, restricted, full-blooded Choctaw Indian No. 6206. The Choctaws, of course, are one of the "Five Civilized Tribes" [composed of the Creek, Choctaw, Chicasaw, Cherokee and Seminole].

This matter is currently before the court for determination on a stipulated fact pattern. The stipulated facts are approved and adopted by the court and will not be set out here except as necessary to clarify our views.

The parties have also stipulated that the two questions of law to be determined by the court are as follows:

(a) whether plaintiffs are barred from recovery by virtue of their failure to timely file a refund claim at the office of the appropriate District Director of Revenue;

(b) whether the income realized in 1958 by plaintiff Joseph Daney [hereinafter referred to as "plaintiff" or "taxpayer" or "Daney"] from an oil and gas lease executed on his allotted Indian land is subject to federal income tax.

### STATUTE OF LIMITATIONS ISSUE

It is stipulated that plaintiffs filed a timely joint tax return for the calendar year 1958 with the District Director of Internal Revenue at Wichita, Kansas, reporting a tax liability of $18,794.53. Only $18,114.89 of the tax liability is attributable to the oil and gas lease transaction and this is the principal sum involved herein. The tax liability was paid. It is also stipulated that the tax return was prepared by the Indian Office in Muskogee, Oklahoma, and the tax liability was paid by the Indian Office out of the restricted funds of the taxpayer.

It is further stipulated that plaintiffs filed their claim for refund in 1962 and that it was received in the Ardmore, Oklahoma office of the District Director of Revenue, Oklahoma City, on April 16, 1962 and at the Wichita Office on May 14, 1962. April 15, 1962 fell on a Sunday.

It is conceded by both sides to this suit that the refund claim was timely filed in Oklahoma, since April 15, 1962 was a Sunday. Defendant contends, however, that it was not timely filed at Wichita, and relies on Treas.Reg. § 301.-6402-2(a) (2), which requires the refund claim to be filed in the office of the district director for the district in which the tax was paid.

■ Under general tax law, this statute of limitations requirement is normally a jurisdictional prerequisite. See, e. g., 10 Mertens, Federal Income Tax § 58A.06 (1960). But general rules of tax law, like general acts of Congress, do not apply to restricted Indians in such a strict manner. See, e. g., Blackbird v. Commissioner, 38 F.2d 976 (10th Cir. 1930). Cf. Big Eagle v. United States, 300 F.2d 765, 156 Ct.Cl. 665 (1962).

■ Judge Rizley of the Western District of Oklahoma has recently ruled that a refund claim can be filed by a restricted Indian at any time. Nash v. Wiseman, 227 F.Supp. 552 (W.D.Okl. 1963). See also 10 Mertens, Federal Income Tax § 58A.06 n. 54 (1960). In other words, the noncompetency of an Indian tolls the applicability of the statutes of limitations. In the case at bar, Daney was no longer a noncompetent at the time he filed his refund claim, but he had been a noncompetent Indian during all of 1958, and the restrictions on his land were not removed until October 21, 1959 [Stipulation, ¶ 7]. We are therefore of the opinion that the running of the three-year period for the filing of refund claims did not commence until after Daney's noncompetence restrictions were removed. Thus the filing of the refund claim in Wichita was timely made; and plaintiffs' claim for refund is not barred by the statute of limitations assuming arguendo that Treas.Reg. § 301. 6402-2(a) (2) applies to restricted Indians.

We would add that Rev.Rul. 61–11, 1961–1 Cum.Bull. 724 permits the allowance of a claim for refund notwithstanding the expiration of the statute of limitations for taxes wrongly assessed and collected "on tax-exempt income directly derived from allotted and restricted Indian lands." Defendant seems to concede that should we rule in favor of plaintiffs on the merits, defendant's statute of limitations argument must also fall. See Brief for Defendant, p. 21.

### THE MERITS OF PLAINTIFFS' CLAIM FOR REFUND

It is stipulated that the land here involved was allotted to Daney by Patent No. 2493 dated July 17, 1903 and recorded December 22, 1924; that by Certificate No. 324 of June 10, 1929 the land involved was designated by taxpayer and

the Department of Interior as tax exempt as long as title remained in Daney, such tax exemption not to extend beyond April 26, 1956; that by § 1 of ch. 786 of P.L. 348 enacted on August 11, 1955, 69 Stat. 666, the restrictions on lands held by members of the Five Civilized Tribes which were to expire to April 26, 1956 were extended for the lives of the Indians. It is further stipulated that the restrictions on Daney's land were removed by Order No. 58 on October 21, 1959.

■ We are met from the outset by several sets of competing principles. On the one hand, under the "general rules" applicable to the tax code, and applicable to "ordinary tax cases," it is well settled that a cash bonus paid for the execution of an oil and gas lease is "treated as" advance royalty in the hands of the lessor, and the bonus is taxable as ordinary income in the year received or accrued and is subject to a reasonable allowance for depletion. E. g., 4 Mertens, Federal Income Tax § 24.63 (1960); Burnet v. Harmel, 287 U.S. 103, 53 S.Ct. 74, 77 L. Ed. 199 (1932); Shamrock Oil & Gas Corp., 35 T.C. 979, 1040 (1961).

■ Further, as to the "ordinary tax case," under the tax code, tax exemptions must be clearly expressed and are not to be found or granted by implication. E. g., Big Eagle v. United States, 300 F. 2d 765, 769, 156 Ct.Cl. 665 (1962).

■ Bluntly, if the "general rules" apply to Daney he would be required to pay the tax to support the government which protects him, but general acts of Congress do not apply to Indians unless so expressed as to clearly manifest an intent to include them. E. g., Elk v. Wilkins, 112 U.S. 94, 5 S.Ct. 41, 28 L.Ed. 643 (1884); Blackbird v. Commissioner, 38 F.2d 976 (10th Cir. 1930). Blackbird, Chouteau v. Commissioner, and Petitt v. Commissioner were companion cases in the Tenth Circuit and were decided under the same citation. Chouteau was a competent Osage; Petitt was a white woman who had inherited land from her children who were Osage tribe members and Blackbird was a noncompetent Osage.

The circuit court upheld taxability as to Chouteau and Petitt; denied taxability as to Blackbird. On review, the Supreme Court affirmed Chouteau but did not review Petitt or Blackbird. See Choteau v. Burnet, 283 U.S. 691, 51 S.Ct. 598, 75 L.Ed. 1353 (1931). In the circuit case the spelling was "Chouteau," but the circuit case and the Supreme Court case clearly involved the same Indian.

■ The Internal Revenue Codes of 1926, 1928, 1932, 1934, 1939 and 1954 made no specific reference to income taxation of noncompetent Indians. See Freeman P. Walker, 37 T.C. 962, 968–969 (1962). We therefore must conclude that special "Indian tax statutes" must be passed by Congress in order to impose tax liability on Indian income.

■ And while tax exemptions are to be strictly construed under the "general rules," the rule is just the opposite as applied to Indians: tax exemptions *are* found by implication in Indian tax cases. E. g., United States v. Hoffman, 306 F.2d 493 (10th Cir. 1962) (per curiam); United States v. Hallam, 304 F.2d 620 (10th Cir. 1962).

■ Further, *all* Indian statutes are to be liberally construed:

"The construction, instead of being strict, is liberal; doubtful expressions, instead of being resolved in favor of the United States, are to be resolved in favor of a weak and defenseless people, who are wards of the nation, and dependent wholly upon its protection and good faith. This rule of construction has been recognized, without exception, for more than a hundred years, and has been applied in tax cases." Choate v. Trapp, 224 U.S. 665, 675, 32 S.Ct. 565, 569, 56 L.Ed. 941, 946 (1912).

■ The tax cases involving restricted, noncompetent Indians are not to be analyzed as "ordinary tax cases." E. g., Squire v. Capoeman, 351 U.S. 1, 76 S.Ct. 611, 100 L.Ed. 883 (1956). Indian tax cases are to give recognition to the guardian-ward relationship between the government and the noncompetent Indian

and to the Congressional policy regarding Indians. "[I]t is not lightly to be assumed that Congress intended to tax the ward for the benefit of the guardian." Squire v. Capoeman, supra, 351 U.S. at 8, 76 S.Ct. at 616, 100 L.Ed. at 890.

Additionally, the Interior Department's publication on Federal Indian Law (1958) states at page 882 that in Squire the Supreme Court reverted to a policy of liberal construction in applying revenue laws to Indians. See Freeman P. Walker, 37 T.C. 962, 970 (1962).

 It must also be noted that as applied to Indians, a tax exempt status accorded to restricted land extends to the income derived directly therefrom. Cohen, Handbook of Federal Indian Law 265, cited with approval, Squire v. Capoeman, supra, 351 U.S. at 9 n. 15, 76 S.Ct. 611, 100 L.Ed. at 890 n. 15. We must further mention two corallaries of this proposition. Indian tax cases involving income from unrestricted land or *competent* Indians [E. g., Choteau v. Burnet, 283 U.S. 691, 51 S.Ct. 598, 75 L.Ed. 1353 (1931) (up from the Tenth Circuit) and a companion case to Blackbird], and cases involving reinvestment income taxation (income on income) [E. g., Superintendent of Five Civilized Tribes for Sandy Fox, Creek No. 1263 v. Commissioner, 295 U.S. 418, 55 S.Ct. 820, 79 L.Ed. 1517 (1935) (up from the Tenth Circuit and commonly cited as the Sandy Fox case)], have no application to the facts at bar. The land involved at bar was at pertinent times restricted land and Daney was a noncompetent ward of defendant.

Congress spoke regarding the taxability of Choctaw income in several special statutes, only some of which will be summarized here.

As background, the basic agreement with the Five Civilized Tribes was the Atoka agreement, embodied later in the Curtis Act. This Act (Act of June 28, 1898 [30 Stat. 495]) provided that

> "All the lands allotted shall be nontaxable while the title remains in the original allottee, but not to exceed twenty-one years from the date of patent * * *."

The period of restrictions on the land was later extended and re-extended.

The Act of April 26, 1906 (34 Stat. 137) continued the restrictions on any land allotted to a full-blooded member of the Five Civilized Tribes and stated:

> "That all lands upon which restrictions are removed shall be subject to taxation, and the other lands shall be exempt from taxation as long as title remains in the original allottee." (emphasis added).

In Section 3 of the Act of May 10, 1928 (45 Stat. 495), Congress stated:

> "That all minerals, including oil and gas, *produced* on or after April 26, 1931, from restricted allotted lands of members of the Five Civilized Tribes in Oklahoma, * * * shall be subject to all * * * Federal taxes of every kind and character the same as those *produced* from lands owned by other citizens of the State of Oklahoma; and the Secretary of the Interior is hereby authorized and directed to cause to be paid, * * * the tax or taxes so assessed against the *royalty interest* * * * *in such oil, gas, and other mineral production.*" (emphasis added)

This section was amended by the Act of February 14, 1931 (46 Stat. 1108) to add a provision against double taxation not here important—and the part of Section 3 quoted above was re-enacted verbatim. Section 3 was again re-enacted in pertinent part (with an additional clause not here important) by the Act of March 12, 1936 (49 Stat. 1160).

Section 1 of the Act of January 27, 1933 (47 Stat. 777) provided for restricted and tax exempt land acquired by inheritance to remain tax exempt for a stated period and provided:

> "That all minerals * * * *produced* from said land so acquired shall be subject to all * * * Federal taxes as provided in section 3 of the Act approved May 10, 1928

(45 Stat.L. 495)." (emphasis added).

This section of the 1933 Act, however, was repealed by Section 12 of the Act of August 4, 1947 (61 Stat. 731) to eliminate possible confusion. The act of August 11, 1955 (69 Stat. 666) extended the period of restrictions on Choctaw land (and all Civilized Tribe land) which period was scheduled to expire on April 26, 1956, "for the lives of the Indians who own such lands subject to such restrictions on the date of this Act."

■ It must also be recognized that outside the confines of "general" tax law, a cash bonus is recognized as being distinct from a royalty. A "royalty" has always been considered to be a share of production, or a share of the product or proceeds therefrom, while a "cash bonus" has been viewed as a consideration paid for the execution of an oil and gas lease. E. g., Federal Land Bank of Wichita, Kan. v. Nicholson, 207 Okl. 512, 251 P.2d 490 (1953); Carroll v. Bowen, 180 Okl. 215, 68 P.2d 733 (1937); cf. Wright v. Brush, 115 F.2d 265 (10th Cir. 1940).

And it must further be recognized that the various regulations adopted by the Commissioner have never considered bonuses to be a part of production or advance royalties, but have considered each separately. In fact, the Commissioner has specifically declared that

> "A cash bonus, though termed an advance royalty payment, paid to a lessor without regard to production and often in a year when there is no production, *is not a division of products or proceeds therefrom.*" G.C.M. 22730, 1941–1 Cum.Bull. 216 (emphasis added).

See also Shamrock Oil & Gas. Corp., 35 T.C. 979, 1056 (1961).

It is clear from a reading of the oil and gas lease at bar [Exhibit E to Stipulation] that the cash bonus was paid to the Superintendent of the Indian Agency and that the lease was given in consideration of the cash bonus and also in consideration of rents for royalties to be paid in the future. Thus the cash bonus was given without regard to production.

Keeping in mind that in Blackbird v. Commissioner, supra, the Tenth Circuit held that general revenue laws are not applicable to restricted Indians unless Congress so directs in clear terms, we feel we must hold that the "cash bonus" cases arising under the general tax code and thus arising in "ordinary tax cases" cannot control the disposition of the case at bar.

Blackbird and United States v. Hallam, supra, show a clear policy in this circuit to construe Indian laws in a light most favorable to the redman. When Congress spoke regarding the taxability of income derived from restricted Choctaw land, it spoke only in terms of production. The Acts spoke in terms of "minerals produced" and in terms of a "royalty interest or other mineral production." As we have seen, a cash bonus is *not* a share of production.

Congress did not specifically state that a cash bonus was to be taxed, nor did it state that a cash bonus would be treated as an "advance" royalty and therefore as a part of production for tax purposes. In this circuit doubtful expressions in Indian tax statutes are to be resolved in favor of the Indian.

It might be argued that Blackbird's wings were clipped by Choteau, supra, and that therefore the policy considerations announced in Blackbird will no longer hold in this circuit. The easy answer is to state that Choteau was a *competent* Indian. Further, in Hoffman and Hallam, the Tenth Circuit continued to find tax exemptions by implication when restricted Indians were involved.

If Daney were a competent Choctaw with unrestricted land, the income would, in our opinion, be taxable since the case would then become in the nature of an "ordinary tax case."

■ But as we read the Supreme Court and Tenth Circuit cases, emphasis is to be given to the "Indian tax rules" over the competing "general tax rules." And in view of the century-old policy of

favorable construction of statutes where Indians are involved, Congress has been put on notice that if it intends to "tax the ward for the benefit of the guardian" it must speak clearly. Congress did speak—in clear terms of *production* only. As we read the special acts of Congress passed regarding the Five Civilized Tribes, Congress limited the taxability of income derived from restricted Indian lands held by noncompetent Indians, to income derived from the production of minerals.

In short, we feel constrained to hold that Congress, in dealing with the Choctaw, must be deemed to have laid down a policy exempting from taxation cash bonuses paid without regard to production in consideration for the execution of oil and gas leases.

Accordingly, we hold that plaintiffs' claim for refund is not barred by the statute of limitations, and hold that the income involved at bar is exempt from taxation. It follows, therefore, that plaintiffs are entitled to recover income taxes in the principal amount of $18,-114.89, plus interest, wrongly assessed and collected for the calendar year 1958.