362 F.2d 810
 Thomas H. DODGE, Superintendent of the Osage Indian Agency, on Behalf of John Coshehe, Jr., Maurice F. Hamilton and wife, and Arita Jump
v.
The UNITED STATES.
 No. 101-64.
 United States Court of Claims.
 June 10, 1966.
 
 Charles A. Hobbs, Washington, D. C., attorney of record, for plaintiff. John W. Cragun, Jerry C. Straus, Washington, D. C., Frank W. Files, Pawhuska, Okl., and Wilkinson, Cragun & Barker, Washington, D. C., of counsel.
 Ira M. Langer, Silver Spring, Md., with whom was Asst. Atty. Gen., Mitchell Rogovin, for defendant. Lyle M. Turner, Philip R. Miller and Mason C. Lewis, Washington, D. C., of counsel.
 Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, and COLLINS, Judges.
 OPINION
 PER CURIAM:
 
 
 1
 This case was referred to Trial Commissioner Marion T. Bennett, with directions to make findings of fact and recommendation for conclusions of law. The commissioner has done so in an opinion and report filed February 11, 1966. On April 15, 1966, plaintiff filed a motion to adopt commissioner's findings and on April 25, 1966, the defendant filed a response to said motion stating that it had no objection to the granting thereof. Since the court agrees with the trial commissioner's findings, opinion and recommended conclusion of law, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case without oral argument. Therefore, plaintiff is entitled to recover for and on behalf of the noncompetent Indians on whose behalf suit has been brought, namely, John Coshehe, Jr., Maurice F. Hamilton and wife, and Arita Jump, and judgment is entered accordingly with the amount of recovery to be determined pursuant to Rule 47(c).
 
 OPINION OF COMMISSIONER*
 BENNETT, Chief Commissioner:
 
 2
 Plaintiff is the former Superintendent of the Osage Indian Agency, suing on behalf of Osage Indians John Coshehe, Jr., Maurice F. Hamilton and wife, and Arita Jump for the recovery of income taxes paid for the taxable years 1951 and 1952. Additional excess income taxes paid for the Indians by the plaintiff Superintendent from headright accounts are conceded by defendant to be refundable but the record does not show whether they have been received by the taxpayers or by the Superintendent on their behalf.
 
 
 3
 During the years for which refunds are sought (1951-52), the Indians involved received headright and other trust income as well as wages from private employment. Their employers deducted the federal withholding tax from the Indians' wages. The Superintendent of the Osage Agency filed the Indians' income tax returns for the pertinent years. He did so because these Indians were noncompetent,[1] reservation Osage Indians with trust income. He had interpreted applicable statutes, regulations, and Interior Department circulars as mandatory directions that he do so. After taking into account any amounts previously withheld by private employers, the Superintendent paid from trust funds additional tax liability found to be due. In computing the tax, headright receipts were included in gross income, in accordance with a general counsel memorandum issued by the Internal Revenue Service, G.C.M. 26399, 1950-2 Cum.Bull.8. However, the Court of Claims later held that headright or trust income of noncompetent Osage Indians was not subject to federal income tax. Hayes Big Eagle v. United States, 300 F.2d 765, 156 Ct.Cl. 665 (1962).
 
 
 4
 When the instant refund claims were thereafter filed in 1962 the Internal Revenue Service proposed to refund that portion of the overpaid tax which was paid directly out of Indian trust funds, even though the statute of limitations on filing claims had expired, but refused to refund amounts attributable to excess taxes withheld from the Indians' taxable wages. This refusal to refund amounts attributable to excess withholding is the bone of contention in the instant case.
 
 
 5
 The principal question is whether the refund provisions of the Internal Revenue Code of 1939 apply to the instant claim. Section 322(b) (1) provides that no refund shall be allowed unless the refund claim was filed within 3 years from the time the return was filed or 2 years from the time the tax was paid. No suit for refund can be maintained until a refund claim has been duly filed according to the provisions of law for filing such claims. Internal Revenue Code of 1954, 26 U.S.C. § 7422(a). The refund claims in question were filed about 10 years after the limitation periods of section 322 (b) (1) had expired, but certain late claims have been allowed where a tax was assessed against the nontaxable income of an Indian and paid out of the Indian's trust funds. Harry Red Eagle v. United States, 300 F.2d 772, 156 Ct.Cl. 680 (1962); 34 Ops. Att'y Gen. 302 (1924); S.M. 5632, V-1 Cum.Bull. 193 (1926). The distinction between the instant case and Red Eagle is that here, even though he erroneously included the headright income subject to tax, the Superintendent did not pay the full amount of the tax overpayment out of the Indians' trust funds. The taxes previously withheld by their employers exceeded the Indians' tax liability for their outside employment. Since the total tax liability on wages plus trust income exceeded the amounts withheld on wages alone, the Superintendent paid the balance due out of the trust funds.
 
 
 6
 Although the problem is quite simply stated, its resolution is not so simple. The equitable exception to the statutory limitation periods for noncompetent Indians with trust income has apparently never been extended to a situation where all the amounts involved were not paid directly out of Indian trust funds. The problem for decision is whether the rationale for the exception includes the instant case.
 
 
 7
 The opinion of the then Attorney General Harlan F. Stone is the rock upon which plaintiff founds his case. The crucial portion of the opinion says (34 Ops. Att'y Gen. 302, 305 (1924)):
 
 
 8
 * * * In fact, so far as the actual payment is concerned, it was in many cases a matter of bookkeeping and so perfunctory that the Indians accepted it as a matter of course and as an unquestionable expenditure of their funds by their conservator and guardian acting for the paternalistic Federal Government. The superintendent acted for them because of their recognized incompetency to act for themselves. The governmentally appointed agent — I refer to the superintendent — having paid this money over, failed to discover the irregularity of his action within the five-year period provided by the income-tax statutes as the limitation period for making claims for recovery. The Indian is not to blame for this, and, if the Government could take advantage of the mistake of its own agent in this regard, it could go just one step farther and in the interests of its revenue instruct the superintendent to allow such claims to lapse. It is needless to remark that such a practice would be repugnant to our conception of a just and fair government's policy toward this dependent people. Having appropriated the funds of its wards under a misapprehension, it should have no hesitancy in returning them. * * *
 
 
 9
 This opinion has been interpreted by the Internal Revenue Service as applying only to taxes paid out of trust funds. Rev.Rul. 61-11, 1961-1 Cum.Bull. 724. However, such a viewpoint seems unnecessarily restrictive. The thrust of the opinion is not, as it has been interpreted by the Internal Revenue Service, directed toward a technical viewpoint of a legal trusteeship of the Indians' funds nor does it rest on their taxability. Rather, it concentrates on the necessity of dealing fairly with a group of people still placed under a disability of dependency and to which a greater obligation is owed than a narrowly legalistic view of what constitutes a technical "duty."
 
 
 10
 It is true that, under the applicable statutes and regulations, there was no explicit duty placed upon the Superintendent to file returns and pay applicable taxes. But the Superintendent has consistently assumed the duty of filing returns for and paying taxes owed by noncompetent Indians with trust incomes who lived on the reservation. Members of this group have undoubtedly come to rely completely upon the good faith and competence of the Superintendent in determining their proper tax liability. This action by the Superintendent and the reliance by the Indians, while possibly not a technical trust duty, is nevertheless part of the broad relationship envisioned by Attorney General Stone as giving special status to those still dependent upon the protection of the Federal Government.
 
 
 11
 Acceptance of the defendant's position would produce the anomalous result that, if two noncompetent Indians for whom the Superintendent filed tax returns and who were otherwise completely alike in every respect save that one had excess withholding from his private employment while the other did not, the one without excess withholding would receive a full refund of his taxes on headright income while the other might not get any refund. This fortuitous result would be the ultimate triumph of form over substance, and cannot be tolerated, particularly in view of the fact that the exception to the statue of limitations is an equitable one.
 
 
 12
 In Nash v. Wiseman, 227 F.Supp. 552 (W.D.Okla.1963), a group of noncompetent Pottawatomie Indians, heirs of a similarly situated deceased Indian, filed an untimely claim for estate taxes deemed erroneously assessed and paid. The Area Director of the Bureau of Indian Affairs had filed the deceased's returns and paid the estate tax.[2] When the Area Director refused to bring an action on behalf of the Indians they sued in their own right for a refund. The court held "a restricted Indian is a ward of the Government and a refund claim can be filed for such a one at any time."[3] This conclusion is equally persuasive in the present case.
 
 
 13
 The Nash v. Wiseman rationale was followed in another recent district court case, Daney v. United States, 247 F.Supp. 533 (Dist.Kan.). The plaintiff had paid tax for 1958 on a cash bonus paid him for the execution of an oil and gas lease on restricted land. Plaintiff's tax return for 1958 had been prepared by the Indian Office, and the tax found due thereon was paid by that office out of plaintiff's restricted funds. The plaintiff filed an untimely refund claim. At the time of filing the 1958 tax return, the plaintiff was a noncompetent, fullblood Choctaw Indian. But, at the time when he filed his claim for refund, the plaintiff was no longer noncompetent. The court held that the refund claim period did not commence to run until the restriction of noncompetence had been removed from the plaintiff and that the claim was therefore timely, since the plaintiff had filed his claim within 3 years of the removal of the restriction.
 
 
 14
 Defendant argues now that Congress has enacted specific legislation in situations where it desired to relieve a statutory burden from the shoulders of the Indians, and to disregard the statute of limitations without such specific legislative sanction would be unwarranted and against congressional policy. Defendant points out instances where specific statutory relief from the statute of limitations was extended to Indians (46 Stat. 370 (1930), 56 Stat. 21, 22 (1942)) and then contends that the failure of Congress to act in 1957, when it was again considering such legislation, was probably due to a desire to extend the statute of limitations exemption no further than had been the previously stated policy of the Internal Revenue Service in S.M. 5632, V-1 Cum.Bull. 193, 198 (1926).
 
 
 15
 In the statutes referred to, the reasons for putting a particular time limit on the refund claims are not stated. But the statutes were enacted in order to effectuate the United States Government policy not "to * * * plead a statute of limitations to escape the obligations of agreement solemnly entered into with its Indian wards, * * *." 56 Stat. 22.
 
 
 16
 These statutes were presumably enacted because of Internal Revenue Service reluctance to grant refunds to Indian claimants after the expiration of the statute of limitations period. In the context of the Internal Revenue Service's prior reluctance to establish a more flexible policy toward the Indians, legislation was proposed in 1957 to waive the statute of limitations on refund claims for taxes paid on income from restricted lands. S. 1839, 85th Congress. In opposing the 1957 legislation, the Treasury Department's enunciation of policy was to the effect that the statute of limitations did not apply in a situation where a government official erroneously paid a tax on nontaxable income and therefore the legislation was unnecessary. But the terms of the Treasury Department letter did not specifically limit the erroneous payment to one out of trust funds belonging to the Indians.[4] The congressional committee could easily have interpreted the Treasury letter to mean that the Internal Revenue Service was not going to use the statute of limitations as a bar to refund where the Indians had relied on a government official to file the tax return and compute the tax liability, and that "paid" was not meant to be interpreted in a very narrow and technical sense. Because it is felt that this interpretation of the reasons for the Judiciary Committee's failure to report the 1957 bill is as reasonable as the speculations of defendant, it is concluded that the legislative inaction cannot be used as a factor for deciding either way in the instant case.
 
 
 17
 Defendant has cited a number of cases holding that oral misrepresentations or other wrongs committed by government agents, which were relied on by the taxpayer to his detriment, do not estop the Government from asserting any defenses available to it, including the statute of limitations. But, plaintiff has not mentioned estoppel in its brief and defendant's discussion of estoppel is not in issue. The only question for decision is whether this case comes within the equitable exception, which the defendant itself accepts, previously established for untimely Indian refund claims for taxes paid from nontaxable restricted income.
 
 
 18
 Similarly, both parties have presented extensive arguments on the question of whether a suit prosecuted by the United States or one of its authorized agents is barred by the statute of limitations. Again, resolution of this problem is unnecessary to the decision of this case and the many knotty problems inherent therein need not be decided.[5] As previously noted, the problem for decision is the scope of the equitable exception to the refund claim provision. If the equitable exception applies to this case, it applies as equally to refund claims by the Indian taxpayers themselves as to claims filed on behalf of the Indians by a government official. See Red Eagle and Nash, supra. Therefore, it is not necessary to determine whether the United States, the Superintendent (as an individual) or the Indians are the real plaintiffs here. Daney, supra, says:
 
 
 19
 Under general tax law, this statute of limitations requirement is normally a jurisdictional prerequisite. * * * But general rules of tax law, like general acts of Congress, do not apply to restricted Indians in such a strict manner. * * *
 
 
 20
 * * * a refund claim can be filed by a restricted Indian at any time. * * * In other words, the noncompetency of an Indian tolls the applicability of the statutes of limitations. * * *
 
 
 21
 And while tax exemptions are to be strictly construed under the "general rules," the rule is just the opposite as applied to Indians: tax exemptions are found by implication in Indian tax cases. * * *
 
 
 22
 Further, all Indian statutes are to be liberally construed: * * *
 
 
 23
 The tax cases involving restricted, noncompetent Indians are not to be analyzed as "ordinary tax cases." * * * "[I]t is not lightly to be assumed that Congress intended to tax the ward for the benefit of the guardian." * * *. [Daney collects the supporting cases.]
 
 
 24
 Having discharged his responsibility to make returns and to pay the tax of these noncompetent, on-reservation Indians, who had headright income, plaintiff had the duty to claim any refunds due such Indians under his broad duty to look after their welfare. But for his honest mistake about taxability of their headright income, the plaintiff Superintendent would have timely discharged such duty. He wrongfully credited excess withholding taxes against the supposed headright liability. It was just as wrong to use withholding tax credits to pay taxes on headright income as it was in Big Eagle and Red Eagle, supra, to pay the income taxes directly from headright income. When plaintiff erroneously collected taxes from these wards on their restricted income he had a duty to seek recovery of them promptly when he discovered his mistake, regardless of what assets were used to pay the taxes. He is trying to do this now and it is concluded that the statute of limitations does not bar the refund claims he has filed. Plaintiff is entitled to judgment on behalf of these wards of the Government, with interest as provided by law.
 
 
 
 Notes:
 
 
 *
 The opinion, findings of fact and recommended conclusion of law are submitted under the order of reference and Rule 57(a)
 
 
 [1]
 A noncompetent Osage Indian is one of at least one-half Osage Indian blood, who does not have a certificate of competency
 
 
 [2]
 The opinion does not specifically indicate, but it is assumed, that the estate tax was paid out of trust funds
 
 
 [3]
 The district court also pointed out that an earlier opinion in that jrisdiction (Landman v. Alexander, 26 F.Supp. 752 (E.D.Okla.); 105 F.2d 1018 (10th Cir. 1939)) had reached a contrary conclusion on a misreading of the applicable precedent. Two other cases cited by defendant as supporting Landman (Davis v. United States, 67 Ct.Cl. 643 (1929); United States v. Richards, 27 F.2d 284 (8th Cir. 1928)) are not relevant because they involved unrestricted Indians who were not under the protection of the United States
 
 
 [4]
 The authority for the Treasury Department letter, however, was a solicitor's memorandum which was limited to payments coming out of Indian trust funds. S.M. 5632, V-1 Cum.Bull. 193, 198 (1926). The Treasury letter is exhibit A to plaintiff's opposition to defendant's motion to dismiss in theRed Eagle case.
 
 
 [5]
 In addition to the issues argued by the parties,i. e., who is the real party in interest and under what circumstances does the statute of limitations apply to the United States, there are other important problems; e. g., assuming that the United States is the real plaintiff here, under what specific statutory authority was the suit brought?