**F I L E D**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

RICHARD BRUNER, JR. and BETTY
K. BRUNER,

      Plaintiffs-Appellants,

v.

UNITED STATES OF AMERICA,

      Defendant-Appellee.

No. 04-5141
(N. D. Oklahoma)
(D. C. No. 02-CV-504-H(C))

**ORDER AND JUDGMENT**[*]

Before **HENRY, MCWILLIAMS,** and **MURPHY**, Circuit Judges
.

      Richard Bruner, Jr., and Betty K. Bruner appeal the district court's decision

affirming the denial of their claims for refunds of federal income taxes.  We

conclude that the district court lacked subject matter jurisdiction over the

Bruners' refund claims for 1984, 1985, and 1991-1993.  For those years, the

Bruners failed to file timely refund claims with the IRS.  For the tax years 1994

and 1995, we affirm the district court's decision for substantially the same

---

[*]  This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  The court generally
disfavors the citation of orders and judgments; nevertheless, an order and
judgment may be cited under the terms and conditions of 10     TH CIR. R. 36.3.

reasons set forth in its August 16, 2004 order.

## I. BACKGROUND

The disputed tax payments arise out of a March 1983 oil and gas lease entered into by Richard Bruner, Jr., and his two brothers with Melzer Exploration Company. The lease covered the southwest quarter of Section 21-8N-9E, of Hughes County, Oklahoma. Pursuant to the lease, Richard Bruner, Jr., received income from the production of oil and gas. Richard Bruner, Jr., and his wife Betty K. Bruner included these oil and gas revenues in their taxable income for the tax years here in dispute: 1983, 1984, and 1991-95.

The land that the Bruner brothers leased to Melzer Exploration Company had been allotted to their grandfather, Miller Bruner, a full blood Creek Indian, in 1903. The homestead deed to Miller Bruner stated that the grant was "subject, however, to the conditions provided by said Act of Congress [of March 1, 1901], and which conditions are that said land shall be non-taxable and inalienable and free from any incumbrance whatever, for twenty-one years." Aplt's App. at 20-21. After Miller Bruner's death, Richard Bruner, Sr., inherited the property. Richard Bruner, Sr. died in September 1981. Richard Bruner, Jr., and his two brothers then each inherited a one-third share in the property.

In 1998, the Bruners filed claims for refunds for the taxes paid on their oil

and gas income for the disputed years. In denying the Bruners' claim for a refund, the Internal Revenue Service concluded that, as to the Bruners' homestead, Congressional legislation had created a tax exemption for twenty-one years. By 1928, when Congress passed a statute authorizing federal and state taxation of income from oil and gas production on restricted allotted lands of members of the Five Civilized Tribes, see 45 Stat. 495, § 3 (May 10, 1928), the tax exemption had expired  Thus, the IRS concluded, "Mr. Bruner is subject to Section 3 of the 1928 Act making the royalties from production received from his restricted Indian land includible in income." Aplts' App. at 93.

The Bruners then challenged the IRS's decision in the United States District Court for the Northern District of Oklahoma, arguing that their oil and gas revenue was exempt from the federal income tax.  As a result, the Bruners alleged, the payment of the tax violated their due process and equal protection rights.  In response, the IRS argued that the court lacked jurisdiction over the Bruners' refund claims for 1984, 1985, and 1991–93 because the Bruners had failed to file their refund claims within the required period.  The IRS also argued that the Bruners' oil and gas income was taxable.

In an August 17, 2004 decision, the district court rejected the Bruners' arguments for a tax exemption.  The court concluded that (a) the early 20th century legislation under which Miller Bruner had  received the original allotment

had only created a tax exemption on the homestead for twenty-one years; (b) in 1928, after that period expired, Congress authorized the taxation of oil and gas income earned by members of the Five Civilized Tribes; and (c) the Bruners' equal protection rights were not violated by the fact that Congress exempted from taxation certain kinds of income derived from Indian lands while taxing the oil and gas income at issue here. The court did not address the IRS's contention that the Bruners' refund claims for 1984, 1985, and 1991-93 were time-barred.

## II. DISCUSSION

The Bruners now contend that the district court erred in rejecting their constitutional challenge to the taxation of their oil and gas revenue. In particular, they argue that the Congressional legislation authorizing taxation income derived from oil and gas proceedings effected an unconstitutional taking of their property in violation of their Fifth Amendment rights.[1] In response, the IRS again contends that the Bruners' challenges to all but the 1994 and 1995 tax years are time-barred. The IRS also urges this court to affirm the district court's ruling on the merits of the Bruners' constitutional challenge.

Because the filing of "a timely tax refund claim with the IRS is a

---

[1]  In this appeal, the Bruners have not pursued their equal protection challenge. See Aplts' Br. at 35.

4

jurisdictional prerequisite to maintaining a tax refund suit," Angle v. United States, 996 F.2d 252, 253 (10th Cir. 1993), we begin with that issue. See Timpanogos Tribe v. Conway, 286 F.3d 1195, 1201 (10th Cir. 2002) ("[J]urisdiction is a threshold question which an appellate court must resolve before addressing the merits of the matter before it." (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83 (1998))). Then, as to the remaining tax years, we proceed to the merits of the Bruners' challenge. The district court's rulings involve questions of law, and we therefore engage in de novo review. See Sac and Fox Nation of Missouri v. Pierce, 213 F.3d 566, 576 (10th Cir. 2000) (reviewing de novo "the district court's construction of federal and state law"); Angle, 996 F.2d at 253 (holding that subject matter jurisdiction is considered de novo).

### A. Tax Years 1984, 1985 and 1991-93

Under 26 U.S.C. § 6511(a), a refund claim for an overpayment of tax must be made within the latter of three years from the time the return is filed or two years from the time the tax is paid. See Richards v. Comm'r, 37 F.3d 587, 589 (10th Cir. 1994). "No credit or refund shall be allowed or made after the expiration of the period of limitation prescribed in subsection (a) for the filing of a claim for credit or refund, unless a claim for credit or refund is filed by the

5

taxpayer within such period." 26 U.S.C. § 6511(b)(1). Moreover, § 7422 of the Internal Revenue Code provides that the failure to comply with these time limits constitutes a jurisdictional defect that bars a lawsuit in federal district court to obtain a refund. See Sorrentino v. IRS, 383 F.3d 1187, 1188 (10th Cir. 2004) (stating that "[§] 6511 of the [Internal Revenue Code] limits the Government's waiver of immunity under § 7422(a) by requiring a taxpayer to file a claim for refund or credit with the IRS within a specified period of time" and that "the taxpayer's timely filing of such claim with the IRS is a jurisdictional prerequisite to maintaining a tax refund suit against the Government").

Here, there is no dispute that, as to the tax years 1984, 1985, and 1991-93, the Bruners did not file their claims for refunds within the required time-period. In particular, the Bruners filed their refund claims on April 14, 1998. By that time more than three years had elapsed from the filing of their 1984, 1985, and 1991-93 returns, and more than two years had elapsed from their latest tax payments for those years. See Aple's Br. at 7 (summarizing the dates on which the Bruners filed returns and paid taxes). Nevertheless, the Bruners argue that the limitations period should be equitably tolled. They cite several cases in which courts have indicated that statutes of limitations may not apply to claims asserted by Indians holding restricted land. Aplts' Reply Br. at 2-3; Dodge v. United States, 362 F.2d 810, 812 (Ct. Cl. 1966) (discussing "[t]he equitable exception to

6

the statutory limitation periods for noncompetent Indians with trust income");

Daney v. United States, 247 F.Supp. 533, 535 (D. Kan. 1965) (stating that "general rules of tax law, like general acts of Congress, do not apply to restricted Indians in such a strict manner" and that "[a judge in the Western District of Oklahoma] has recently ruled that a refund claim can be filed by a restricted Indian at any time").

We are not persuaded by the Bruners' argument. First, in a case decided after those on which the Bruners rely, the Supreme Court has concluded that "Congress did not intend the 'equitable tolling' doctrine to apply to § 6511's time limitations." United States v. Brockamp, 519 U.S. 347, 354 (1997).

Moreover, as the IRS observes, the equitable tolling decisions invoked by the Bruners involved government officials who filed a tax return on behalf of an Indian. Thus, the principle at work is that the Indian taxpayer should not have been precluded from seeking a refund if he or she had relied on a government official to handle tax matters.

Those decisions are inapplicable here. As the IRS indicates, the Bruners did not rely on a government official to pay their tax returns. The Bruners signed their own returns, and they were reviewed and submitted by professional preparers.

Accordingly, we conclude that the district court lacked jurisdiction over the

Bruners' claims for refunds for the years 1984, 1985, and 1991-1993.

B. Tax Years 1994 and 1995

As to the tax years 1994 and 1995, we conclude for substantially the same reasons set forth in the district court's August 16, 2004 order that the taxation of the Bruners' income from the oil and gas lease did not violate their Fifth Amendment due process rights.

As the district court explained, the original Creek Agreement of 1901, 31 Stat. 861, and the Supplemental Creek Agreement of 1902, 32 Stat. 500, provided that forty acres of every allotment would be nontaxable for a period of twenty-one years. In 1928, Congress passed a statute providing that:

> all minerals, including oil and gas, produced on or after April 26, 1931, from restricted allotted lands of members of the Five Civilized Tribes in Oklahoma, or from inherited restricted lands of full-blood Indian heirs or devisees of such lands, shall be subject to all State and Federal taxes of every kind and character the same as those Produced from lands owned by other citizens of the State of Oklahoma;

45 Stat. at 496 (emphasis added). By 1928, the exemption period for the Bruners' land had ended. Thus, the 1928 statute constituted a valid exercise of Congress's powers under the Indian Commerce Clause of the United States Constitution, U.S. Const. Art. I, § 8, cl. 3. See Squire v. Capoeman, 351 U.S. 1, 6 (1956) ("We agree with the Government that Indians are citizens and that in ordinary affairs of

8

life, not governed by treaties or remedial legislation, they are subject to the payment of income taxes as are other citizens.").

The cases on which the Bruners primarily rely are distinguishable. They involve statutes that imposed taxes within a period that had been deemed tax-exempt by prior legislation.

Thus, in Choate v. Trapp, 224 U.S. 665 (1912), the Supreme Court considered the claims of Choctaw and Chickasaw Indians who had received allotted land under the Atoka Agreement, which provided that "[a]ll the lands allotted shall be nontaxable while the title remains in the original allottee, but not to exceed twenty-one years from the date of patent." 30 Stat 507 (June 28, 1898). Despite the provisions of the Atoka agreement, Congress, in 1908, had passed a statute removing restrictions on the sale and encumbrance of land and also providing that the lands from which restrictions had been removed would be subject to taxation. The state of Oklahoma had then attempted to impose property taxes.

The Supreme Court held that the land could not be taxed. The Court reasoned that the state had created a contractual right in a tax exemption for a certain number of years. Thus, "[u]nder the provisions of the 5th Amendment, there was no more power to deprive [the Indian allottee] of the exemption than of

any other right in the property." Choate, 224 U.S. at 674. In English v. Richardson, 224 U.S. 680 (1912), the Court applied this reasoning to the attempted imposition of state taxes upon a Creek Indian. Citing Choate, the Court held that the attempted imposition of a state tax was invalid.

Unlike the 1928 statute at issue here, the statutes challenged in Choate and English fell within the original period of the tax exemption established when the federal government first conveyed the allotted land. Here, the tax exemption period ended in 1924, twenty-one years after Mr. Bruner's grandfather, Miller Bruner, received a deed to the homestead. Congress's imposition of a federal income tax after that period did not constitute an unlawful taking under the Fifth Amendment.

Finally, we note the Bruners' observation that Congress has continued to impose restrictions upon alienation of the allotted land at issue. According to the Bruners, Congress's extension of the restrictions upon alienation indicates that the tax exemptions set forth in the Original Creek Agreement have been continued as well. However, as the district court correctly explained, "land restrictions and tax exemptions are discrete entities." Aplt's App. at 484 (District Court Order, filed August 16, 2004, at 23); see Okla. Tax Comm'n v. United States, 319 U.S. 598, 607 (1943) ("Nontaxability and restriction upon alienation are distinct

10

things, and when Congress wants to require both non-alienability and nontaxability it can, as it has so often done, say so explicitly.") (internal quotation marks and citation omitted). Thus, in light of Congress's clear authorization in the 1928 statute of federal income taxes on oil and gas revenues, the restrictions upon alienation invoked by the Bruners do not create an exemption from taxation.

## III. CONCLUSION

Accordingly, as to the tax years 1984, 1985 and 1991-93, we conclude that the district court lacked subject matter jurisdiction over the Bruners' refund claims. Therefore, as to the Bruners' refund claims for those tax years, we VACATE the district court's decision and remand with instructions to dismiss for lack of subject matter jurisdiction.

As to the tax years 1994 and 1995, we conclude that the Bruners' oil and gas revenue was properly subject to federal income taxation. Therefore, as to Bruners' refund claims for those years, we AFFIRM the district court's decision.

Entered for the Court,


Robert H. Henry
Circuit Judge

11