Peelle, J.,
delivered the opinion of the court:
The Congress, bjr the act of March 3,1817 (19 Stat. L., 518, 535), making appropriation for the payment of claims allowed by the Commissioners of Claims, appropriated $725 to pay the claimant’s decedent, Joshua Everhart. In due course a Treasury draft for the amount, payable to said Everhart, was issued (March 30, 1877) and mailed to him, but not being delivered was returned to the Treasurer; and after the lapse of three years was, on the 9th day of J uly, 1880, covered into the Treasury by warrant to the credit of said Everhart as an outstanding liability" under the provisions of Revised Statutes, sections 306, 307, and 308.
Those sections of Revised Statutes are as follows:
‘ ‘ Sec. 306. At the termination of each fiscal year all amounts of moneys that are represented by certificates, drafts, or cheeks issued by the Treasurer or by any disbursing officer of any department of the Government upon the Treasurer or any assistant treasurer or designated depositary of the United States or upon any national bank designated as a depositary of the United States, and which shall be represented on the books of either of such offices as standing to the credit of any disbursing officer, and which were issued to facilitate the payment of warrants, or for any other purpose in liquidation of a debt due from the United States, and which have for three years or more remained outstanding, unsatisfied, and unpaid, shall be deposited by the Treasurer, to be covered into the Treasuxy by warrant, and to be carried to the credit of the *116 parties in whose favor such certificates,.drafts, or checks were respectively issued, or to the persons who are entitled to receive pay therefor, and into an appropriation account to be denominated ‘Outstanding liabilities.’
“Sec. 307. The certificate of the Register of the Treasury, stating that the amount of any draft issued by tfie Treasurer to facilitate the payment of a warrant directed to him for payment has remained outstanding and unpaid for three years or more, and has been deposited and covered into the Treasury in the manner prescribed by the preceding section, shall be, when attached to any such warrant, a sufficient voucher in satisfaction of any such warrant or part of any warrant, the same as if the drafts coi’rectly indorsed and fully satisfied were attached to such warrant or part of warrant. And all such moneys mentioned in this and in the preceding section shall remain as a permanent appropriation for the redemption and payment of all such outstanding and unpaid certificates, drafts, and checks.
“Sec. 308. The payee or'the bona fide holder of any draft or check, the amount of which has been deposited and covered into the Treasury pursuant to the preceding sections, shall, on presenting the same to the proper officer of the Treasury, be entitled to have it paid by the settlement of an account and the issuing of a warrant in his favor, according to the practice in other cases of authorized and liquidated claims against the United States.”
If the case stopped there, there would be no doubt about the claimant’s right to recover, but by the act of March 30, 1888 (25 Stat. L., 47, 50), it was, among other things, provided:
“That so much of the act approved March third, eighteen hundred and seventy-seven, entitled ‘An act making appropriations for the payment of claims reported allowed by the Commissioners of Claims under the act of Congress of March third, eighteen hundred and seventy-one,’ as appropriates the sum of seven hundred and twenty-five dollars to Joshua Ever-hart, be, and the same is hereby, repealed.”
Thereafter, November 12,1888, the claimant was appointed administrator of the estate of Joshua Everhart, and July 6, 1900, he presented, under the provisions of said section 308, a claim to the Secretary of the Treasury for the payment of said draft, which was refused, presumably upon the ground of the repealing act aforesaid.
More than six years after the date of said repealing act, to *117 wit, November 20, 1900, the claimant filed his petition in this court.
The claimant’s contention is that “the act of March 3, 1877 (making appropriation), was fully executed when the draft in payment of the claim, after three years, was covered into the permanent appropriation for outstanding liabilities,” and that when so covered into the Treasury the amount thereof became a trust fund to the credit of the payee and was payable not out of the appropriation of March 3, 1877, but out of the “permanent appropriation for the redemption and payment of all such outstanding and unpaid certificates, drafts, and checks,” as provided by section 307.
The claimant grounds his right to recover on the case of United States v. Wardwell (172 U. S., 48, 53).
In that case certain checks had been drawn by army officers in 1869 upon an assistant treasurer of the United States, and not being presented for payment within three years from their date, the amounts thereof were covered into the Treasury and carried to the account of outstanding liabilities. In 1890 application was made for payment, but refused, and within six years thereafter an action was brought.
The court said, affirming the decision of this court (32 C. Cls. R., 30), that — ■
“ No time is mentioned within which he must apply for a warrant or after which the money is forfeited to the Government. The ordinary rules for the maturity of negotiable paper do not control. Congress has directed that the money already once appropriated and chequed against shall be placed in the Treasury and held subject to the call of the party for whose benefit it has been so appropriated and chequed. There is no occasion for suit until after his application for a warrant is refused. When the contract created by the promise made in section 308 is broken, then a claim for the breach of such contract first accrues, and the limitation prescribed by section 1069 begins to run.”
And, further, it was held in respect to said sections that—
‘ ‘ While it may be that they do not provide for the creation of an express trust, liability for which, according to general rules, continues until there is-a direct repudiation thereof, yet they contain a promise by. the Government to hold the money thus covered into the Treasury for the benefit of the owner until such time as he shall call for it. This is a con *118 tinuing promise, and one to which full force and efficacy should be given.”
The claimant’s contention that there were two separate appropriations in respect of the amount of the draft, i. e., one appropriating the money to pay and the other “a permanent appropriation for the redemption and payment of all such outstanding and unpaid certificates, drafts, and checks,” can not be sustained, for the reason that when the money appropriated was covered into the Treasury, as before stated, it was the act appropriating the money that thereby became for the purpose of the paj’ment of said amount “ a permanent appropriation.” That is to say, the act appropriating the money became “a permanent appropriation for the redemption and payment ” of the money so covered into the Treasury, and as such was a continuing promise to hold the money until it was called for by the owner or the trust was disavowed.
Even if the money thus held by the Government should be treated as an express trust, it would still be subject to the qualification “ that time begins to run against a trust as soon as it is openly disavowed by the trustee, insisting upon an adverse right and interest which is clearly and unequivocally made known to the cestui que trust; as when, for instance, such transactions take place between the trustee and the cestui que trust as would in case of tenants in common amount to an ouster of one of them by the other.” (Speidel v. Henrici, 120 U. S. R., 377, 386, cited with approval in the case of Riddle v. Whitehill, 135 U. S. R., 621, 634.)
The act of March 30, 1888 (supra), repealing the provision of the act of March 3, 1877, appropriating 1725 to the claimant’s decedent, was an open disavowal of the trust by the United States, of which the claimant was bound to take notice, and from that time the statute of limitations began to run, and the claimant’s petition not having been filed in this court for more than six years thereafter, the claim is barred under provision of Revised Statutes, section 1069, which is not only a statute of limitations, but is jurisdictional as well. (Finn v. United States, 123 U. S., 227, cited approvingly in the Wardwell case, supra.)
As no demand was made for the payment of the money until July, 1900, the petition was filed within six years from *119 that date, but as under the authority cited we hold that the statute began to run from the date of the repealing- act disavowing- the trust, it will not be necessary to consider the question as to whether the claimant could have maintained an action had his petition been filed within six years from the date of the repealing act.
The petition is dismissed.