The **UNITED STATES**

v.

The **NATIVE VILLAGE OF UNALAKLEET** et al.

Ind. Cl. Comm. Docket No. 285

19 Ind. Cl. Comm. 140 (1968).

The **UNITED STATES**

v.

The **ALEUT COMMUNITY OF ST. PAUL ISLAND.**

Ind. Cl. Comm. Docket No. 352

19 Ind. Cl. Comm. 140 (1968)

The **UNITED STATES**

v.

The **ALEUT TRIBE** et al.

Ind. Cl. Comm. Docket No. 369

19 Ind. Cl. Comm. 140 (1968)

Nos. 2–68 to 4–68.

United States Court of Claims.

June 20, 1969.

Ralph A. Barney, Washington, D. C., with whom was Acting Asst. Atty. Gen. Glen E. Taylor, for appellant.

John W. Hendrickson, Anchorage, Alaska, attorney of record for appellees The Native Village of Unalakleet, and others.

Donald H. Green, Washington, D. C., attorney of record for appellees The Aleut Community of St. Paul Island and The Aleut Tribe, and others.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## OPINION

NICHOLS, Judge.

These cases come before the court on a certification of a question of law by the Indian Claims Commission (hereinafter referred to as the Commission) pursuant to 25 U.S.C. § 70s.(a). It involves the claims of these separate groups of petitioners before the Commission: The Native Village of Unalakleet, a duly incorporated Eskimo band chartered under the Act of June 18, 1934 (48 Stat. 984 as amended by the Act of May 1, 1936, 49 Stat. 1250). The Aleut Community of St. Paul Island, a band of Alaskan natives residing on St. Paul Island, one of the Pribilof Islands in Alaska, organized under a constitution approved by the Secretary of the Interior pursuant to the Act of June 18, 1934 and The Aleut Tribe, which is represented by The Aleut Community of St. Paul Island, a subdivision or community of the Aleut Tribe. Each of the petitioners duly filed its claims with the Commission and the Government moved for summary judgment in each of the cases. The Government's motions challenged the jurisdiction of the Commission to hear the three cases on the grounds that the petitioners in each case were not an "Indian tribe, band or other identifiable group of American Indians" within the meaning of Section 2 of the Indian Claims Commission Act, 25 U.S. C. § 70a. The petitioners of The Native Village of Unalakleet are Eskimos and the petitioners in each of the other two cases are Aleuts. Both Eskimos and Aleuts are Alaskan aborigines but the Government urges that the term "American Indian" as used in the Indian Claims Commission Act is not broad enough to encompass all American aborigines and that therefore the Commission is without jurisdiction to entertain these claims. In the cases of the Aleut Tribe and the Aleut Community of St.

Paul Island, the Government also moved for summary judgment on the grounds that the petitions failed to state claims for which relief could be granted and further that the claim of the Aleut Community of St. Paul Island was barred by our decision in Aleut Community of St. Paul Island v. United States, 117 F. Supp. 427, 127 Ct.Cl. 328 (1954). Because the Government's motions raised a jurisdictional issue common to all three cases, they were consolidated for the purposes of ruling on the motions. The Commission denied the Government's motions and the Government appealed the denial to this court. The petitioners before the Commission now challenge the appeal to this court as premature at the stage the litigation has reached.

While the Government's appeal was pending, the Commission certified the following question to us:

Does the Indian Claims Commission have jurisdiction to entertain the claims of any or all of the subject petitioners under the provisions of the Indian Claims Commission Act of 1946 (25 U.S.C. § 70a.) which provides that the Commission shall hear and determine claims against the United States on behalf of any Indian tribe, band or other indentifiable group of American Indians residing within the territorial limits of the United States or Alaska?

The Commission in denying the Government's motion for summary judgment answered this question affirmatively. It also decided that the petitions of the Aleut Tribe and the Aleut Community of St. Paul Island did present justiciable claims of damages to alleged hunting and fishing rights, and that our decision in Aleut Community of St. Paul Island v. United States, *supra*, was not a bar to the present suit. The parties have advised the court that they consider the question the Commission has certified as broad enough to cover these issues. For purposes of this case, at any rate, we agree it can reasonably be so construed and we do so construe it. Our answer to the certified question therefore renders moot

the issue whether the appeal is premature, and we do not consider it further.

■ The primary issue as the Commission viewed it and the answer to the certified question as presented to us is one of legislative intent. To answer the question of the Commission we must determine if "American Indian" as used in Section 2 of the Indian Claims Commission Act was intended by the Congress to be used generically and include all aborigines of the United States and Alaska, or whether the Congress intended the term to be more limited and specific. On the basis of the material presented to the Commission and to us by the parties on both sides, we believe that the Congress did intend the act to encompass claims by all American aborigines and that the term "American Indian" is not used with a view to excluding the descendants of any pre-Columbian inhabitants of North America.

The Government argues that by applying rules of statutory construction, there is only one result which we can reach. Quoting language from Otoe and Missouria Tribe v. United States, 131 F. Supp. 265, 131 Ct.Cl. 593, cert. denied 350 U.S. 848, 76 S.Ct. 82, 100 L.Ed. 755 (1955), the Government maintains that in interpreting a statute the words used should be given their "plain meaning." With this we agree; however, here we are confronted with a statute using language that has no "plain meaning." The term "Indian" is as ambiguous as any in the English language. The preferred meaning per Webster's Third International is still a native of India or of the East Indies. The word was originally applied to the natives of the New World by European discoverers because they incorrectly thought they had arrived at the East Indies. One calls them as Congress did, "American Indians" to avoid a solecism. The Handbook of American Indians published by the Bureau of American Ethnology, a part of the Smithsonian Institution, defines the word "Indian" as "the common designation of the aborigines of America." "Eskimo" is defined as a "group of

American aborigines forming part of the Eskimauan linguistic stock" and "Aleut" is defined as "a branch of the Esquimauan family inhabiting the Aleutian [islands]." Thus according to the Bureau of Ethnology, Eskimos and Aleuts would qualify as "Indians." But there are canons of statutory construction other than the "plain meaning" approach to which we can look. As this court said in an earlier Indian claims case, Otoe and Missouria Tribe v. United States, *supra*, 131 F.Supp. 265, at 272, at 603:

One step in the discovery of legislative meaning or intent is the ascertainment of the legislative purpose, i. e., the reasons which prompted the enactment of the law. The purpose of the legislature may well tend to reveal the meaning of the language used by the lawmakers since we assume that the legislators sought to use language which would carry out their purpose rather than to defeat it. In seeking to ascertain the legislative purpose, it is proper to look at the circumstances existing at the time of the enactment of the statute, to the necessity for the law, the evils intended to be cured by it, to the intended remedy, and to the law as it existed prior to such enactment.

Using these criteria, we think that the intent of the Congress becomes clear.

For many years prior to the enactment of the Indian Claims Commission Act the only method by which American aborigines generally could present·claims against the Federal Government was to have a special jurisdictional act passed by the Congress to allow the claimants to bring suit in the Court of Claims. This procedure was inefficient as it required a Congressional inquiry into the nature of the claims before a jurisdictional bill could be passed. Many of the claims were quite old, many were repetitious and some were unfounded; thus the task of considering each claim became quite burdensome for the Congress. At least as early as 1930 bills proposing the creation of an independent

court or commission to hear Indian claims and relieve the Congress of this task were introduced. *See,* Legislative Material on the Indian Claims Commission Act of 1946 (Ehrenfeld & Barker eds.). Finally in 1946 the Indian Claims Commission Act was passed. Though the Act had humanitarian origins and was an attempt to remedy past injustices, Congress had been doing that piecemeal for years and the most compelling reason for passage was to relieve Congress from the task of considering jurisdictional bills each and every time an American aboriginal claimant appeared. It makes absolutely no sense for the Congress to have divested itself of the jurisdiction over some aboriginal claims and not over others. Had Congress intended to exclude Eskimos and Aleuts from the provisions of the Indian Claims Commission Act, it would have left itelf saddled with the very situation it was seeking to end, namely, it would again have had to entertain jurisdictional statutes in order that those groups could seek relief, to avoid patent discrimination. There is nothing in the history of this statute to show that the Congress intended such a result. The Government, answering inquiries from the bench, admits it can suggest nothing, nor have we been able to discover anything, to indicate that Congress in creating the Commission had any reason whatever to exclude Eskimos and Aleuts from the scope of its jurisdiction.

▉ Though we need not go so far here, we may at times construe a statute contrary to its "plain language" if a literal interpretation makes a discrimination for which no rational ground can be suggested. *E. g.,* Grayson v. United States, 149 F.Supp. 183, 137 Ct.Cl. 779 (1957).

The Government finds it significant that there is no specific mention of Eskimos or Aleuts in the legislative history of the Indian Claims Commission Act. From this the Government infers that these groups were not to be included within the category of claimants permitted to file before the Commission.

The petitioners, on the other hand, draw the opposite inference. They consider that it was so obvious that Congress intended to include Eskimos and Aleuts that there was no need to make specific mention of those groups. While we do not regard the lack of specific mention of Aleuts and Eskimos in the reports on the Act as conclusive one way or the other, in light of the purposes of the Act and the background of the Act, we can attach some significance to it.

At the time Congress was considering H.R. 4497, the bill which became the Indian Claims Commission Act, both the Justice Department and the Department of the Interior were invited to comment on the bill. Among the changes considered by the Justice Department was the deletion of the phrase "other indentifiable group" from the classes of potential claimants. The then Acting Solicitor of the Department of the Interior, Felix Cohen, objected to this deletion in a memo to the Secretary of the Interior for the reason that:

> The omission of this phrase might very well be construed to exclude from the scope of the bill Pueblos and other town or village organizations, such as exist among the Creeks and among certain Alaskan Indian and Eskimo groups, which cannot be brought within the definition of "tribe" or "band" without considerable straining. The exclusion of any native group from the scope of this bill would not only be an unfair discrimination, but would destroy the main objective of the bill, which is to achieve a final and comprehensive solution of the Indian claims problem.

The Congress apparently agreed with this and retained the phrase "other identifiable group." The Commission quoted it as legislative history, perhaps mistakenly. The Government challenges the Commission's reliance on this memo, as it says that it was never brought to the attention of Congress, that Congress can not therefore have been said to have relied on it, and further that it cannot validly be considered a part of the legisla-

tive history for purposes of interpreting the Act. Strictly speaking, the memo is not part of legislative history if it never went before the Congress. However, there is more than one way of ascertaining legislative intent, and a feeble light is better than none at all. The memo shows how the language, as it was being enacted, was construed within a concerned Government department. This is not so very different from how such a department construed it soon after enactment. One must remember that the legislative histories revealed in the published material are but fragments of all that really occurred, and that the interpretations of executive department officials who participated in an advisory capacity, as the record shows Mr. Cohen did, are often clues to what is unrecorded. But the memo, if nothing more, reflects Mr. Cohen's personal views, and these are of more than negligible importance, we believe, for reasons that will appear.

The Government also urges that had Congress intended "Indians" to include Eskimos and Aleuts it could have so specified or it could have amended the Act to expend the legislation as it has done before. Such was the case with 25 U.S.C. § 443a, 70 Stat. 1057 where the provision "For the purpose of this section the term 'Indian' shall include Eskimos and Aleuts" was added. It was added however not to expand the scope of the legislation, but as stated in H. R. Rep. No. 2593 accompanying the bill which became § 443a:

> The bill was amended by the committee to make its provisions applicable to Eskimos and Aleuts. This is a clarifying amendment to remove any doubt as to the bill's application to Eskimos and Aleuts * * *.

Admittedly, the Congress could have passed a "clarifying" amendment to the Indian Claims Commission Act, but perhaps it has not done so because if felt this to be unnecessary.

Counsel and the Commission below have discussed at length a dictum in United States v. Booth, 161 F.Supp. 269, 275, 17 Alaska 561 (1958), to the effect that "Wherever Congress has intended the word 'Indian' to include Aleuts and Eskimos, an express statement to that effect has been made * * *." As a statement of law, this is not binding on us. As a statement of fact, it is simply not so.

The Act of June 2, 1924, 43 Stat. 253, formerly 8 U.S.C. § 3 provided:

> That all non-citizen Indians born within the territorial limits of the United States be, and they are hereby, declared to be citizens of the United States * * *.

This has been said or held to have made Eskimos into citizens as of June 2, 1924. Hynes v. Grimes Packing Co., 165 F.2d 323, 326, 11 Alaska 564 (9th Cir.1947), rev'd on other grounds 337 U.S. 86, 69 S.Ct. 968, 93 L.Ed. 1231 (1949). As Indian citizens they have enjoyed substantially the position of Indians in the "South 48." The Handbook of Federal Indian Law indicates at p. 404 that Alaskan natives have been citizens at least since 1924, and it continues:

> The legal position of the individual Alaskan natives has been generally assimilated to that of the Indians in the United States. It is now substantially established that they occupy the same relation to the Federal Government as do the Indians residing in the United States; that they, their property, and their affairs are under the protection of the Federal Government; that Congress may enact such legislation as it deems fit for their benefit and protection; and that the laws of the United States with respect to the Indians resident within the boundaries of the United States proper are generally applicable to the Alaskan natives.

The Handbook, published in 1941, was written by the Assistant Solicitor of the Interior Department, the Felix Cohen mentioned above. It was an official publication of the Interior Department. The Solicitor of the Department wrote in the book's "Introduction" that the author had "brought to bear in the writing

of this work * * * seven years of practical experience in handling on the various Indian reservations the most difficult controversies that have arisen during that period and in drafting a significant part of the legislation about which he writes." This book was in existence at the time that hearings were held on the Indian Claims Commission Act and at the time the Act was passed. As no other authority existed in any degree as useful, it is reasonable to speculate that the Congress or its staff consulted this book and that it became aware of the Department of the Interior's position towards the Alaskan natives as reflected in the quoted passage. The Department's position is even more clearly stated in an opinion of the Solicitor of the Interior Department dated June 5, 1940, and quoted with approval in the Handbook at p. 406:

> In considering the application to Alaskan natives of laws relating to Indians it is well to bear in mind the following point: The laws which relate specifically to Alaska normally define the terms "natives" or "Indians" and define them as including Indians, Eskimos, Aleuts and other aboriginal tribes * * *. However, in the case of the application to the natives of laws drafted to cover the Indians in the United States, it is apparent that the law itself will refer only to "Indians," and the general rule must be followed that the laws relating to Indians in the United States are applicable to the natives in Alaska in so far as they are suitable to the circumstances of the case. * * * Memo. Sol I.D. June 5, 1940.

While we have referred to the 1941 edition of the Handbook, as the one current when the Indian Claims Commission Act was before the Congress, it may be pertinent to add that the Interior Department republished the work in 1958 under the title Federal Indian Law, edited by others as Mr. Cohen had by that time unhappily passed away. The passages above quoted are repeated verbatim at pp. 934 and 938, showing that down to that comparatively recent date the position of the Interior Department had not changed.

The statements in the Handbook are documented with references to numerous opinions of the Interior Department Solicitors other than the one quoted *supra;* they need not be specifically identified here.

Apart from the expression of his views having been in official documents and publications, Mr. Cohen's standing in the world of legal scholarship would justify a court in citing him as authority in his own right, as it might Williston on a question of contract law or Wigmore on evidence. Solicitor Margold wrote in the introduction to the Handbook at p. XV:

> When I assigned to the writer of these words the task of applying to the field of Indian law the standards of scholarship which he had written about and demonstrated in several other fields, I did so with the conviction that the resulting work would be a contribution to legal scholarship and legal method as well as to the immediate field of Indian law.

A footnote lists Mr. Cohen's contributions to the literature of jurisprudence, beginning in 1931, down to 1940.

The Government also contends that anthropologically the Eskimos and Aleuts cannot be considered Indians. Some anthropological material was presented to the Commission to show that Eskimos and Aleuts are from racial stock differing from that of "Indians," although the most recent anthropological data tends to refute this position. In the view that the Commission took of this case it did not find it necessary to consider this anthropological data, nor do we in light of our position that the statute was intended to apply to all American aborigines. It is enough to say that a construction of a statute rendering it constitutional is always preferred. If Congress had intended race, creed, or color, slant of eyes or shape of craniums, to be the determining factor

in whether or not aboriginal groups could present claims, and at the same time having no rational grounds for the distinction, we would have serious doubts about the validity of the statute. In the introduction to the Handbook of Federal Indian Law (1941 ed.) Solicitor Margold wrote at p. X:

> The right to be immune from racial discrimination by governmental agencies is an essential part of the fabric of democratic government in the United States * * *.

> Despite a widely prevalent impression to the contrary, all Indians born in the United States are citizens of the United States and of the state in which they reside * * *. These rights take on a special significance against the background of highly organized administrative control. They indicate that a body of federal Indian law, considered as "racial law," would be as much an anomaly as a body of federal law 'for persons of Teutonic descent * * *.

■ We turn now to the question of whether or not the petitions of the Aleut Tribe and the Aleut Community of St. Paul Island state causes of action for those petitioners. The Government has argued that the claims are based upon damages to petitioners' alleged hunting and fishing rights to which the claimants are not entitled, and that the Commission should have dismissed these cases. It is true as this court said recently in Tlingit and Haida Indians v. United States, 389 F.2d 778 at p. 785, 182 Ct.Cl. 130, at p. 141 (1968):

> Since the primordial decision in Geer v. Connecticut, 161 U.S. 519 (1896), it has been uniformly held that there is no property right in any private citizen or group to wild game or to freely-swimming migratory fish in navigable waters. * * *

but in reading pleadings for the purposes of a motion to dismiss or for summary judgment, we are obliged to consider them in a light most favorable to the party against whom judgment is sought. In doing so in this case we are forced to uphold the Commission's denial of the Government's motion for summary judgment. The petitions claim causes of action based on a lack of fair and honorable dealings, a cause of action created by the Indian Claims Commission Act and one which differs from claims for damages to hunting and fishing rights, such as this court adjudicated, under a more limited jurisdictional Act, in the case cited. We think, as the Commission did, that the petitioners should have an opportunity to advance these claims at a trial on the merits.

■ The Government's final argument in the case of the Aleut Community of St. Paul Island is that their claims if not barred for other reasons are barred by our decision in the Aleut Community of St. Paul Island v. United States, *supra*. That case was brought under 28 U.S.C. § 1505 (formerly 25 U.S.C. § 70a.) for claims accruing after the passage of the Indian Claims Commission Act of 1946. The claims the petitioners now seek to present are ones which accrued before 1946. This court had no jurisdiction to entertain claims covered by the present petitions and therefore the former decision involving the Aleut Community of St. Paul Island is not res judicata in the present case. The petition of the Aleut Community states that it "relates to different injuries and damages which were sustained prior" to 1946 and cites various examples all of which predate the earlier suit in this court.

For the above reasons we answer the question the Commission has certified to us in the affirmative. As this answer has disposed also of the issues tendered in the Government's appeal, we dismiss it as now moot. We pretermit the question whether the appeal was prematurely taken.