Horton CAPOEMAN

v.

The UNITED STATES.

No. 524-69.

United States Court of Claims.

April 16, 1971.

Charles A. Hobbs, attorney of record for plaintiff, Wilkinson, Cragun & Barker, and Charles H. Gibbs, Jr., Washington, D. C., of counsel.

Herbert Pittle, Washington, D. C., with whom was Asst. Atty. Gen. Shiro Kashiwa, for defendant.

Before COWEN, Chief Judge, LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

NICHOLS, Judge.

This case is before us on cross motions for summary judgment. The plaintiff is a so-called "noncompetent" Quinault Indian who is suing for recovery of certain charges made by the Government incident to the sale by it, as trustee, of the timber standing on plaintiff's trust allotment. This court presently has jurisdiction under 28 U.S.C. § 1491, to hear the claims of individual citizen Indians. Fields v. United States, 423 F.2d 380, 191 Ct.Cl. 191 (1970).

Defendant holds title to plaintiff's land as trustee pursuant to the General Allotment Act of 1887, 25 U.S.C. §§ 331 et seq., under which plaintiff was allotted in October, 1907, a "trust patent" for 93.25 acres situated on the Quinault Indian Reservation in the State of Washington. Between June 30, 1943, and August 10, 1946, defendant sold timber standing on plaintiff's allotment to the Aloha Lumber Company, for $15,080.80, from which it retained $1,238.87, as administrative expenses, under purported authority of 25 U.S.C. § 413, and credited only $13,841.93 to plaintiff's trust account.

Plaintiff says that defendant had no right to make any deductions from the proceeds of the sale and that by so doing there has been assessed a "charge" on plaintiff's trust allotment in violation of the rights vested in plaintiff by 25 U.S.C. § 348. That act provides, inter alia, that:

Upon the approval of the allotments provided for in sections 331-334 of this title, by the Secretary of the Inte-

rior, he shall cause patents to issue therefor in the name of the allottees, which patents shall be of the legal effect, and declare that the United States does and will hold the land thus allotted, for the period of twenty-five years, in trust for the sole use and benefit of the Indian to whom such allotment shall have been made, or, in case of his decease, of his heirs according to the laws of the State or Territory where such land is located, and that at the expiration of said period the United States will convey the same by patent to said Indian, or his heirs as aforesaid, in fee, discharged of said trust and *free of all charge or incumbrance whatsoever:* * * *. (Emphasis supplied.)

The trust period has been extended. See 25 U.S.C. § 391 and 25 U.S.C. § 462.

Defendant, in its cross motion for summary judgment, has raised the threshold question of whether plaintiff's claim is barred by the six year period of limitations provided in the Tucker Act, 28 U.S.C. § 2501:

> Every claim of which the Court of Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues.

The contested deduction was made and notice given to plaintiff in 1946. Plaintiff filed his claim in this court on December 24, 1969. He does not contend that he is within the six year period but he asserts that the statute of limitations should not be applied to bar his claim. In support of this contention, he advances three related theories which we will consider one at a time.

First, he cites as a rule that where the Government holds property in trust for another, "the statute does not run against a beneficiary until the trust is terminated or repudiated." As authority he refers us to United States v. Taylor, 104 U.S. 216, 26 L.Ed. 721 (1881); Wayne v. United States, 26 Ct.Cl. 274 (1891), and Russell v. United States, 37 Ct.Cl. 113 (1902). But those cases all involved liquidated claims for which money had been appropriated and the validity of which was uncontested. That is, money which the Government acknowledged owing to the plaintiffs was allowed by the plaintiffs to sit unclaimed in the Treasury for many years. The court in each case held that the statute of limitations did not begin to run until demand for payment had been made. The refusal to pay on demand was held to be a "repudiation" of the trust. In United States v. Taylor, *supra*, the Supreme Court said at 221:

> This section limits no time within which application must be made for the proceeds of the sale. The Secretary of the Treasury was not authorized to fix such a limit. It was his duty, whenever the owner of the land or his legal representatives should apply for the money, to draw a warrant therefor without regard to the period which had elapsed since the sale. The fact that six or any other number of years had passed did not authorize him to refuse payment. The person entitled to the money could allow it to remain in the treasury for an indefinite period without losing his right to demand and receive it. It follows that if he was not required to demand it within six years, he was not required to sue for it within that time.

The case at bar is easily distinguishable because here, the Government contends that plaintiff *never* had a right to the fund in suit, and it has been holding adversely to him ever since the deduction was first made. In the cited cases the only barrier imposed by the defendant against plaintiff's recovery was the passage of time.

Plaintiff next contends that his claim comes under the exception to the limitations period of § 2501, which provides:

> A petition on the claim of a person under legal disability or beyond the seas at the time the claim accrues may be filed within three years after the disability ceases.

"Disability" is of course a term of many meanings. A person whose driver's license has been revoked might be deemed to be under a "disability", but we suppose it would not toll the running of limitations under § 2501 as to any claim against the Government he might have. Logically, one would look for a "disability" that impaired his access to the Court of Claims in some manner. Plaintiff's counsel cheerfully concedes that whatever of such access he has today, he had in 1946 when the claim accrued, and has had at all times in between. While the "disability" proviso speaks of all citizens without discrimination, plaintiff seeks to invoke it by some mystique peculiar to Indian law. We do not reject that idea without examining it with care and solicitude, as befits the modern attitude towards that much wronged race.

Plaintiff asserts that his status as a "noncompetent" Indian is indistinguishable from the disability of infancy or mental incapacity. We reject that view. The classification as "noncompetent" is in reference to plaintiff's being an allottee of a trust patent issued pursuant to the General Allotment Act, which provides that any such allottee shall be incapable of alienating his allotment during the period of the trust. The Act of May 8, 1906, 25 U.S.C. § 349, amended the General Allotment Act to provide that:

> * * * the Secretary of the Interior may, in his discretion, and he is authorized, whenever he shall be satisfied that any Indian allottee is competent and capable of managing his or her affairs at any time to cause to be issued to such allottee a patent in fee simple, and thereafter all restrictions as to sale, incumbrance, or taxation of said land shall be removed and said land shall not be liable to the satisfaction of any debt contracted prior to the issuing of such patent: * * *

In the plaintiff's case, the Secretary has never issued to him a patent in fee simple, and therefore as to this allotted land he remains to that extent "noncompetent". That, however, does not mean plaintiff is not otherwise capable of managing his affairs and dealing with any other property he might own in any manner he wishes. This "noncompetency" in relation to his trust allotment would not prevent him from making a will, or entering a contract which did not involve the allotted land. There may be other reasons, apart from his being a holder of a patent on restricted land, why plaintiff could be adjudged legally incompetent, but he has alleged none in this proceeding. Indeed, if such were the case, this action would have to be prosecuted by his duly appointed representative under Rule 61(c), and his suing in his own name confesses that such "disability" does not exist. The Supreme Court said in Poafpybitty v. Skelly Oil Co., 390 U.S. 365, 368–369, 88 S.Ct. 982, 984, 19 L.Ed.2d 1238 (1968):

> * * *. In our view, these restrictions on the Indian's control of his land are mere incidents of the promises made by the United States in various treaties to protect Indian land and have no effect on the Indian's capacity to institute the court action necessary to protect his property. * * *

We might infer as a corollary to that statement that the "have no effect" language cuts both ways—that is, the Indian, while not handicapped by his restricted status, is not thereby given a crutch with which to avoid a clear mandate of Congress, *i. e.*, the statute of limitations.

The most authoritative treatise on the subject of Indian law is the handbook, *Federal Indian Law*, written by the late Felix Cohen, and published by the Department of the Interior. We refer to Cohen on Indians as we would to Wigmore on Evidence. United States v. Native Village of Unalakleet, 411 F.2d 1255, 1259–1260, 188 Ct.Cl. 1, 12 (1969). Mr. Cohen devoted an entire section of his book to the meaning of "incompetency". In the 1958 edition at page 553,

under the heading *Restricted Meanings*, is the following:

&ast; &ast; &ast;. Perhaps the most frequent special use of the term "incompetency" is to describe the status of an Indian incapable of alienating some or all of his real property. Such an Indian may be competent in the ordinary legal sense. An outstanding example is Charles Curtis, who, though he became Senator and Vice President of the United States, remained all his life an incompetent Indian, incapable of disposing of his trust property by deed or devise, without securing the approval of the Secretary of the Interior.

Plaintiff's reliance on Chisholm v. House, 183 F.2d 698 (10th Cir. 1950), is clearly misplaced. That was a suit by the heirs of a deceased Creek Indian to recover from trustees of the deceased, certain fees and loans which were alleged to be "exorbitant, unconscionable and fraudulently obtained". The defendant-trustees were private parties, the statute of limitations involved was prescribed by state law, not the Tucker Act, and the corpus of the trust did not include any "restricted" property. In ruling that the action was not barred the court said, at 706:

&ast; &ast; &ast; neither the statute of limitations nor laches operate to bar a claim based upon undiscovered fraud or fraud of which the plaintiff was justifiably ignorant. &ast; &ast; &ast;

That observation would apply to other claimants than Indians. The court found justifiable ignorance because the *cestui que trust*, the deceased Indian, although legally competent,

&ast; &ast; &ast; could neither read nor speak the English language, he knew and understood only what was explained to him through an interpreter, and even then it is manifest on this record that he had little or no knowledge or understanding of his affairs, or the manner in which they were being administered. &ast; &ast; &ast;

In *Chisholm*, the plaintiff was not a "noncompetent" Indian. In this case, so far as the record shows, the plaintiff is not an "incompetent" Indian, either in fact or in law.

Plaintiff has not alleged his factual incompetency, nor has he alleged that any official of the Government was guilty of fraud or unconscionable actions or of withholding information upon which to base this action. Indeed, in 1956, plaintiff sued in the Supreme Court for recovery of capital gains taxes levied on the same transaction under scrutiny here. Squire v. Capoeman, 351 U.S. 1, 76 S.Ct. 611, 100 L.Ed. 883 (1956). He was represented there by a member of the same capable law firm of which his present counsel is another member. Plaintiff's present counsel concedes that all of the information necessary to prosecute the instant claim was known to plaintiff and his counsel at the time of the former suit. Thus we have every reason to believe that nothing prevented plaintiff from pressing the instant claim at least by the time he brought the former action, in 1956.

Plaintiff's final contention is that the statute of limitations is not applicable to bar "a restricted Indian's claim against the United States for misappropriation of his trust funds". He refers us to several tax cases which, he says, have held that the status of being a restricted Indian is sufficient to toll the running of a statute on a claim against the Government.

It will be noted that this branch of the argument does not turn on the "disability" or any other express exception to 28 U.S.C. § 2501, as the cases to be cited construe statutes of limitations having no pertinent express exception. Nash v. Wiseman, 227 F.Supp. 552 (W.D.Okl.1963), involved a Federal estate tax which had been erroneously paid by the Area Director of the Bureau of Indian Affairs when he filed a return on behalf of the estate of a deceased Indian. Upon refusal of the Area Director to claim a refund, the heirs brought an ac-

tion for a refund in the District Court. Even though the three year limitation period provided for claims for refund in the Internal Revenue Code of 1939, § 910, had run with no claim filed, the court allowed the action, holding that "a restricted Indian is a ward of the Government and a refund claim can be filed for such a one at any time". Similar issues were involved in Daney v. United States, 247 F.Supp. 533 (D.Kansas 1965), aff'd, 370 F.2d 791 (10th Cir., 1966), where the Indian Office prepared the tax return and paid the liability out of plaintiff's restricted funds. The court there said at 535 "the noncompetency of an Indian tolls the applicability of the statute of limitations".

In Dodge v. United States, 362 F.2d 810, 176 Ct.Cl. 476 (1966), the Superintendent of the Osage Indian Agency had filed income tax returns on behalf of the noncompetent Indians involved, and had paid tax on their "headright" income, following a General Counsel's Memorandum, G.C.M. 26399—1950—2 Cum.Bull. 8. Some ten years later, this court in Hayes Big Eagle v. United States, 300 F.2d 765, 156 Ct.Cl. 665 (1962), had held that "headright" and other trust income of noncompetent Osage Indians was not subject to Federal income tax. The Superintendent thereupon filed refund claims which the IRS disallowed because of § 322(b) (1) of the 1939 Code, which provides that no refund shall be allowed unless the claim was filed within three years of filing of the return or two years of payment of the tax. This court cited *Nash* and *Daney* with approval and found an "equitable exception" to the above limitations period in the case of noncompetent Indians with trust income. Chief Commissioner Bennett, in a succinct and scholarly opinion adopted by the court, relied, in part, on an opinion of Attorney General Harlan F. Stone, 34 Ops.Att'y.Gen. 302, 305 (1924):

* * *. In fact, so far as the actual payment is concerned, it was in many cases a matter of bookkeeping and so perfunctory that the Indians accepted it as a matter of course and as an unquestionable expenditure of their funds by their conservator and guardian acting for the paternalistic Federal Government. The *superintendent acted for them* because of their recognized incompetency to act for themselves. The governmentally appointed agent—I refer to the superintendent —having paid this money over, failed to discover the irregularity of his action within the five-year period provided by the income-tax statutes as the limitation period for making claims for recovery. The Indian is not to blame for this, and, if the Government could take advantage of the mistake of its own agent in this regard, it could go just one step farther and in the interests of its revenue instruct the superintendent to allow such claims to lapse. It is needless to remark that such a practice would be repugnant to our conception of a just and fair government's policy toward this dependent people. Having appropriated the funds of its wards under a misapprehension, it should have no hesitancy in returning them. * * *. (Emphasis supplied).

Chief Commissioner Bennett also found some evidence of an intent on the part of Congress to exempt the Indians from the limitations period of the Internal Revenue Code. He noted the following, 362 F.2d at 814, 176 Ct.Cl. at 483:

* * *. In the context of the Internal Revenue Service's prior reluctance to establish a more flexible policy toward the Indians, legislation was proposed in 1957 to waive the statute of limitations on refund claims for taxes paid on income from restricted lands. S. 1839, 85th Congress. In opposing the 1957 legislation, the Treasury Department's enunciation of policy was to the effect that the statute of limitations did not apply in a situation where a government official erroneously paid a tax on nontaxable income and therefore the legislation was unnecessary. * * *. The congressional committee could easily have in-

terpreted the Treasury letter to mean that the Internal Revenue Service was not going to use the statute of limitations as a bar to refund *where the Indians had relied on a government official to file the tax return and compute the tax liability*, * * *. (Emphasis supplied).

We think that this line of cases is most readily stated as establishing an implied exception to the three-year requirement for claiming tax refunds, when an official of the taxing Government has prepared the return and should have filed the claim, for an Indian ward. Occasionally, as in that situation, courts will read exceptions into tax laws that seemingly provide for none. Select Tire Salvage Co. v. United States, 386 F.2d 1008, 1012, 181 Ct.Cl. 695, 703 (1967), and cases cited. An ordinary taxpayer, preparing his own return or having it done by an independent accountant or lawyer, would consider a GCM and not follow it if he thought its conclusions debatable. This is the case Congress contemplated and it reasonably required that this taxpayer assert his claim promptly. On the other hand, an official of the United States Government could not set up his judgment about the meaning of the Internal Revenue Code in opposition to that of the General Counsel of the Treasury. Thus the mechanisms that Congress devised, to protect taxpayers against erroneous Treasury rulings, would not be set in motion. As to this Indian, an exception to the three-year period is required to enable other parts of the Code to operate as they were meant to do. The Indian's claim on the court's sympathy is essentially equitable, for he may be deemed the victim of a conflict of interest, or something akin thereto, in that the person who purported to act for him as guardian or trustee could not exercise his unfettered judgment on the ward's behalf. The case was not within the contemplation of Congress, and it was not its purpose to foreclose it.

Such a restructuring of an unambiguous limitation in a taxing statute is not to be done lightly and in the absence of a clear and convincing showing of why. As Mr. Justice Butler wrote in the leading case along that line, Helvering v. New York Trust Co., 292 U.S. 455, 464, 54 S.Ct. 806, 808, 78 L.Ed. 1361 (1934):

> The rule that where the statute contains no ambiguity, it must be taken literally and given effect according to its language is a sound one not to be put aside to avoid hardships that may sometimes result from giving effect to the legislative purpose. * * *

After this preliminary which showed that the true issue was the legislative purpose, he proceeded to investigate whether that purpose agreed with the literal language, and showed that there it did not.

Having followed plaintiff into the thicket of tax law, we return with the knowledge that the question whether to read an implied exception into a statute is to be answered after inquiry into the purpose of the statute involved.

The statute here is 28 U.S.C. § 2501 and unlike the plaintiff in *Dodge, supra*, ours here offers no reason why the literal language of the statute might be held to differ from the legislative intent. That this is the case respecting a provision of the Internal Revenue Code does nothing to show it also is respecting 28 U.S.C. § 2501, and we are given no materials we might use in duplicating in this different area Commissioner Bennett's structure of fact and logic he erected in the *Dodge* case.

What we really come down to is a naked claim that statutes of limitations do not run against Indians, competent or not, disabled or not. This involves a preference of one litigant against another, on mere racial grounds, that would if intended by Congress be repugnant to the Constitution. *See,* United States v. Native Village of Unalakleet, *supra*, 411 F.2d at 1260–1261, 188 Ct.Cl. at 13. Cohen says, *op. cit., supra*, at 543:

> In the absence of statute, Indian litigants are subject to the same defenses as other people. Except with respect

to restricted property, they may lose their rights because of laches, and the running of statutes of limitations.[23]

The footnote, omitted here, shows that the exception as to "restricted property" relates primarily to suits in which an Indian contests title to land presently or formerly restricted, as against another claimant: limitations and laches also do not run while the Indian is denied citizenship and access to the courts, unlike the case here. Compare Schrimpscher v. Stockton, 183 U.S. 290, 22 S.Ct. 107, 46 L.Ed. 203 (1902), with Felix v. Patrick, 145 U.S. 317, 12 S.Ct. 862, 36 L.Ed. 719 (1892). Cohen continues:

> They are also subject to the restrictions against suing sovereigns without their consent.

Congress has made specific provision for modifying or waiving the statute of limitations for Indians in several instances. In § 70a of the Indian Claims Commission Act, 60 Stat. 1049, 25 U.S. C. § 70a (1946), the Commission is authorized to hear claims accruing before August 13, 1946, "on behalf of any Indian tribe, band or other identifiable group of American Indians * * * notwithstanding any statute of limitations or laches". In 25 U.S.C. § 347, provision is made for the application of state statutes of limitations in certain suits involving lands patented in severalty under treaties. This is some evidence to the effect that where Congress wants to make exceptions for Indians, it will so provide. There is no such exception in the Tucker Act, and we cannot by judicial fiat expand our jurisdiction beyond the statutory limits established by the Congress. Graf v. United States, 24 F. Supp. 54, 87 Ct.Cl. 495 (1938).

It is true that the cases speak of the "special relationship" of the Indians vis-a-vis the Government, variously referred to as a "wardship" or a "guardianship", see Blackbird v. Commissioner of Internal Revenue, 38 F.2d 976 (10th Cir. 1930), and cases cited therein; and in the interpretation of statutes relating to the Indians the courts have mentioned "a rule of liberal construction", Choate v. Trapp, 224 U.S. 665, 32 S.Ct. 565, 56 L.Ed. 941 (1912); and have said that "General acts of congress did not apply to Indians unless so expressed as to clearly manifest an intention to include them", Elk v. Wilkins, 112 U.S. 94, 100, 5 S.Ct. 41, 44, 28 L.Ed. 643 (1884). But it is equally true that the Supreme Court has been quick to confine such broad language to the context in which it was used. Cf. United States v. First National Bank, 234 U.S. 245, 259, 34 S. Ct. 846, 58 L.Ed. 1298 (1914), where the Court held that the rule that words in treaties and statutes must be interpreted as the Indians understood them is not applicable where the statute is not in the nature of a contract and does not require the consent of the Indians to make it effectual. In F.P.C. v. Tuscarora Indian Nation, 362 U.S. 99, 116, 80 S.Ct. 543, 4 L.Ed.2d 584 (1960), the Court, in reference to the Elk v. Wilkins rule, *supra*, said:

> * * *. However that may have been, it is now well settled by many decisions of this Court that a general statute in terms applying to all persons includes Indians and their property interests. * * *

In Mann v. United States, 399 F.2d 672 (9th Cir. 1968) the court held that the two-year limitation of the Federal Tort Claims Act, 28 U.S.C. § 2401(b), bars the untimely suit of an Indian claimant. He attempted without avail to show that the nature of his life as an Indian kept him from knowing that he could sue.

We hold on reason and authority that plaintiff's claim is barred by the statute of limitations in 28 U.S.C. § 2501.

In view of this, we find it unnecessary to pass on the merits of plaintiff's claim.

Accordingly, plaintiff's claim is barred because it accrued more than six years prior to bringing this suit. His motion for summary judgment is denied and his petition is dismissed. Defendant's motion for summary judgment is granted.