HARRY H. KARMUN AND ALICE G. KARMUN, PETITIONERS
*V.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 21168–82.     Filed January 30, 1984.

*Herbert A. Ross,* for the petitioners.
*Thomas N. Tomashek* and *Richard Shipley,* for the respondent.

## OPINION

FEATHERSTON, *Judge:* Respondent determined deficiencies in the amounts of $1,931 and $8,688.83 in petitioners' Federal income taxes for 1977 and 1978, respectively. The issue to be decided is whether petitioners, who are Natives of Alaska, are exempt from Federal income taxes by the Reindeer Industry Act of 1937, 25 U.S.C. sec. 500, on income earned from the sale of reindeer and reindeer products.

All of the facts are stipulated.

At the time of filing the petition, petitioners resided in Deering, Alaska. For 1977 and 1978, they filed Federal income tax returns with the Internal Revenue Service Center, Ogden, Utah. For the same years, petitioner Harry H. Karmun and his father, Alfred K. Karmun, filed partnership returns for their partnership named Alfred K. Karmun & Son (the

---

partnership). The income here in dispute was petitioners' distributive share of the partnership's income, all of which was realized from the sale of reindeer and reindeer products during 1977 and 1978.[1] The reindeer were grazed on public land under grazing permits issued by the Secretary of the Interior (Secretary) pursuant to the Reindeer Industry Act of 1937, 25 U.S.C. sec. 500 (hereinafter the Reindeer Act or the act).

The partnership's reindeer, referred to as the Karmun herd, numbered approximately 2,000 in 1977 and 1978. The Karmun herd is one of the largest of approximately 12 to 15 Alaskan reindeer herds operated under the Reindeer Act.

The Reindeer Act, codified as 25 U.S.C. secs. 500a through 500n, was adopted for the declared purpose, among others, of "providing means of subsistence for the Eskimos and other natives of Alaska."[2] To this end, the act authorized the Secretary to acquire, if necessary by eminent domain, for and on behalf of the Eskimos and other Natives of Alaska, reindeer and other property owned by non-Natives and to use the property so acquired for the management and operation of reindeer herds in Alaska. The act further authorized the Secretary to distribute, or hold in trust, the reindeer and other property and to organize, manage, and regulate the reindeer industry and the grazing of public lands in such manner as to establish and maintain for such Alaska Natives a self-sustaining business.

It is stipulated that both petitioners are Natives of Alaska as that term is used in the Reindeer Act. They contend that the income that they received from the partnership's ownership and operation of the Karmun herd is exempt from Federal income taxes. Respondent contends that the Reindeer Act does not grant petitioners exemption from Federal income taxes.

---

[1] The notice of deficiency refers to the "production and sale of reindeer meat, horns, and other products."

[2] The purpose of the Reindeer Industry Act of 1937 was stated in 25 U.S.C. sec. 500 (1982), as follows:

"A necessity for providing means of subsistence for the Eskimos and other natives of Alaska is hereby declared to exist. It is also declared to be the policy of Congress, and the purpose of this Subchapter, to establish and maintain for the said natives of Alaska a self-sustaining economy by acquiring and organizing for and on behalf of said natives a reindeer industry or business, by encouraging and developing native activity and responsibility in all branches of the said industry or business, and by preserving the native character of the said industry or business thus established."

Petitioners are correct that Natives of Alaska, as defined in the Reindeer Act,[3] have essentially the same status in relation to the Federal Government as American Indians. The term "Indian" as used in laws relating to American Indians includes Eskimos, Aleuts, and other aboriginal tribes insofar as this meaning is suitable to the circumstances of the case. *United States v. Native Village of Unalakleet*, 188 Ct. Cl. 1, 6–9, 411 F.2d 1255, 1257–1258 (1969); *Pence v. Kleppe*, 529 F.2d 135, 138 n. 5 (9th Cir. 1976). The Federal Government has recognized its responsibility of maintaining a form of guardianship and providing a degree of protection for Alaska Natives. Cf. *Alaska Pacific Fisheries v. United States*, 248 U.S. 78 (1918). We must, therefore, follow the principles of the decided cases on the tax status of American Indians in weighing the merits of the parties' arguments.

The courts have recognized that sections 1 and 61 of the Internal Revenue Code of 1954 broadly provide that the income, from whatever source derived, of every individual is subject to the Federal income tax. The mere fact that an individual is an Indian does not in itself insulate him from taxation. *Superintendent v. Commissioner*, 295 U.S. 418 (1935). The income of Indians, Eskimos, and other Natives of Alaska is thus taxable unless an exemption from taxation can be found in the language of a treaty or act of Congress. *Commissioner v. Walker*, 326 F.2d 261, 263 (9th Cir. 1964), affg. in part and revg. in part 37 T.C. 962 (1964), and cases cited therein; *Jourdain v. Commissioner*, 71 T.C. 980, 987 (1979), affd. per curiam 617 F.2d 507 (8th Cir. 1980). The "intent to exclude must be definitely expressed." *Choteau v. Burnet*, 283 U.S. 691, 696 (1931). The Court is not free to create by implication a tax exemption for petitioners. *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 156 (1973); *Fry v. United States*, 557 F.2d 646, 649 (9th Cir. 1977); *Jourdain v. Commissioner, supra* at 990. We can hold for petitioners only if we can find "express exemptive

---

[3]25 U.S.C. sec. 500n defines "natives of Alaska" as follows:

"The term 'natives of Alaska' as used herein shall be deemed to mean the native Indians, Eskimos, and Aleuts of whole or part blood inhabiting Alaska at the time of the Treaty of Cession of Alaska to the United States and their descendants of whole or part blood, together with the Indians and Eskimos who, since the year 1867 and prior to * * * [Sept. 1, 1937], have migrated into Alaska from the Dominion of Canada, and their descendants of the whole or part blood."

language in some statute or treaty." *United States v. Anderson,* 625 F.2d 910, 913 (9th Cir. 1980).

Nothing in the Reindeer Act refers to an exemption from Federal income taxes, and we have not located, nor have petitioners cited, any exemptive language in any other statute or treaty. We must, therefore, hold that petitioners are taxable on their distributive share of the partnership income derived from the operation of the Karmun reindeer herd.

Emphasizing that Eskimos and other Natives of Alaska enjoy the same status and are entitled to the same protection as American Indians in the continental United States, petitioners cite the following provision of 25 U.S.C. sec. 1322(b) as a "statute showing Congressional intent regarding nontaxability":

Nothing in this section shall authorize the alienation, encumbrance, or taxation of any real or personal property, including water rights, belonging to any Indian or any Indian tribe, band or community, that is held in trust by the United States or is subject to a restriction against alienation imposed by the United States; * * *

This provision is not a part of the Reindeer Act. It is part of a statute (Pub. L. 90–284, Tit. IV, Apr. 11, 1968, 82 Stat. 78) defining the jurisdiction to be exercised by State courts over causes of action to which Indians are parties. The provision does not refer to Federal income taxes. It is designed to preserve the existing limits on the power of States, not the United States, to impose taxes on property which belongs to Indians or Indian tribes, is held in trust by the United States, or is subject to restrictions or alienations imposed by the United States. See *Bryan v. Itasca County,* 426 U.S. 373 (1976); *Eastern Band of Cherokee Indians v. Lynch,* 632 F.2d 373 (4th Cir. 1980). The statute, therefore, does not aid petitioners' cause.

Petitioners next argue that, under the provisions of 25 U.S.C. sec. 500i,[4] which is part of the Reindeer Act, reindeer

---

[4]Sec. 500i. Alienation of reindeer or interests; penalty

Live reindeer in Alaska, and the increase thereof, acquired by the Secretary of the Interior pursuant to this Act [25 USCS Secs. 500 et seq.], and live reindeer in Alaska, and the increase thereof, owned by the said natives of Alaska * * * however acquired, shall not be sold or transferred, by descent, devise, or in any other manner whatsoever, to anyone other than the said natives of Alaska, the United States for and on behalf of said natives, * * * except with the consent in writing of the Secretary of the Interior or his duly authorized agent, stating that such

and reindeer products are "restricted property," as that term is used in Indian law, and that, under the principles of *Squire v. Capoeman*, 351 U.S. 1 (1956), income derived from restricted property is exempt from Federal income taxes. We do not agree.

In *Squire v. Capoeman, supra,* the United States sought to tax an Indian's capital gain resulting from the severance and sale of timber from land allotted to him under the Indian General Allotment Act of 1887, 24 Stat. 388, 25 U.S.C. sec. 331 et seq. (hereinafter the Allotment Act).[5] The Allotment Act provided that allotted land was to be held in trust by the United States for the "sole use and benefit" of the Indian allottee, subject to a promise to convey the fee interest to the allottee at the end of the trust period "free of all change or incumbrance whatsoever." 25 U.S.C. sec. 348. Finding a congressional intent in this specific statutory language to exempt allotted land from all taxes until the fee interest was transferred to the allottee (351 U.S. at 8), the Supreme Court held that income derived directly from the land was exempt from tax. The Court went on to say that "The purpose of the allotment system was to protect the Indians' interest and 'to prepare the Indians to take their place as independent, qualified members of the modern body politic.'" (351 U.S. at 9); *Critzer v. United States*, 220 Ct. Cl. 43, 49–50, 597 F.2d 708, 712 (1979). Further noting the fact that the cutting of the timber had substantially decreased the value of the land, the Supreme Court stated *(Squire v. Capoeman*, 351 U.S. at 10):

---

consent is given upon the condition that the reindeer, and any increase thereof, sold or otherwise transferred with said consent, shall either be butchered in the Territory [State] of Alaska within thirty days or shipped out of said Territory [State] and never brought back alive into said Territory [State]. Sales or other transfers of said reindeer, if made. without the consent in writing herein required, or, although made with said consent, if followed by failure to comply with the condition therein required, shall be null and void, and shall not pass any title to or right to possession of any reindeer or increase thereof. * * *

[5]Under the Indian General Allotment Act of 1887, ch. 119, 24 Stat. 388, 25 U.S.C. sec. 331, as amended, Indians were to be allotted up to 160 acres of grazing land or 80 acres of agricultural land on their reservations. The land so allotted was to be held in trust by the United States, for the "sole use and benefit" of the Indian allottee, for a period of 25 years (longer in the discretion of the President). At the end of the trust period, the land was to be conveyed to the allottee, "in fee, discharged of said trust and free of all charge or incumbrance whatsoever." See also the Indian Reorganization Act of 1934, ch. 576, sec. 2, 48 Stat. 984, 25 U.S.C. sec. 462, which provides: "The existing periods of trust placed upon any Indian lands and any restriction on alienation thereof are hereby extended and continued until otherwise directed by Congress."

Unless the proceeds of the timber sale are preserved for respondent [the Indian taxpayer], he cannot go forward when declared competent with the necessary chance of economic survival in competition with others. This chance is guaranteed by the tax exemption afforded by the General Allotment Act * * *

There is no language in the Reindeer Act comparable to the free-of-incumbrance language found in the Allotment Act. Moreover, the whole purpose and concept of the Reindeer Act is different from that of the Allotment Act. The legislative history of the Reindeer Act shows that it was not intended to benefit or promote the welfare of the 12 to 15 Alaskan reindeer herd owners but was intended to provide a reliable food supply for the Eskimos of northwestern Alaska. H. Rept. 1188, 75th Cong., 1st. Sess., Reindeer Industry in Alaska (1937); S. Rept. 474, 75th Cong., 1st. Sess., Alaska Reindeer Industry (1937).

These congressional reports state that the coming of the white man to the western and northwestern parts of Alaska brought disaster to the Natives' food supply. To save the Native from starvation, 1,280 reindeer were imported from Siberia between 1892 and 1902. These reindeer, the only ruminants able to eke out a living by grazing on the lichens or reindeer moss found in the areas bordering on the Bering Sea and the Arctic Ocean, multiplied rapidly and became the only substantial and assured food supply for the Natives. Reindeer became the most important element in Eskimo economy.

By 1937, however, non-Native Alaskans had acquired a third of the reindeer herds, were operating them as commercial ventures, and were depleting the available grazing resources without regard to the welfare of the Natives. Conflicts between the Eskimo and non-Eskimo owners threatened irreparable damage not only to the reindeer industry but to the entire life and economy of the Eskimos. To deal with this problem, Congress enacted the Reindeer Act authorizing acquisition of the non-Eskimo-owned herds and ownership and operation by Alaskan Natives of the reindeer industry under the supervision of the Secretary of the Interior.[6]

---

[6]H. Rept. 1188, 75th Cong., 1st. Sess. 3 (1937), concludes:

"The committee believes the enactment of this bill, although it authorizes an appropriation of $2,000,000, would result in real economy. The Eskimos and Indians are the original inhabitants of Alaska and they are entitled to a fair degree of protection and aid from the Government of the

As explained in *Squire v. Capoeman, supra*, the broad purpose of the Allotment Act's land ownership restrictions was to benefit the individual allottees by preparing them for an independent place in society. The purpose of the Reindeer Act, in contrast, was not to benefit the individuals whose reindeer herd ownership rights were restricted, but, rather, to provide a continuing source of food for the Eskimos and other Alaskan Natives.[7] There is nothing in the Reindeer Act inconsistent with the imposition of an income tax on the profits realized by the owners and operators from their reindeer herds. Cf. *Holt v. Commissioner*, 364 F.2d 38 (8th Cir. 1966), affg. 44 T.C. 686 (1966). In the words of *Squire v. Capoeman*, 351 U.S. at 6, in the absence of some exemption provision, the reindeer herd operators are "subject to the payment of income taxes as are other citizens."

It is no answer to say that the reindeer herd owners and operators could more effectively carry out the objectives of the Reindeer Act if they were tax exempt.[8] In *United States v. Anderson*, 625 F.2d 910, 917 (9th Cir. 1980), the Court of Appeals reversed a District Court holding that the Federal policies reflected by the Indian Reorganization Act of 1934 of promoting optimal land use of reservations and eventual Indian economic independence precluded the taxation of an

---

United States. It is the duty of the Government to make proper provision for their social and economic welfare. The passage of this measure should result in the setting up and carrying forward of a self-sustaining Eskimo economy. While the initial investment contemplated by the bill is substantial that investment ought to give ample returns over the years in the economic independence, the physical welfare and the enjoyment of opportunity of the natives of Alaska. It is easy to provide for them now and to make them entirely self-sustaining, but to make such provisions in the future will be more costly and more difficult."

[7]Petitioners have attached to their brief copies of certain memoranda prepared by field officials of the Department of the Interior on the tax status of the reindeer herd owners. These memoranda conclude that the owners are not subject to taxation by the State of Alaska, acknowledge that the Internal Revenue Service has responsibility for interpretation of the Federal income tax laws, and suggest that the reindeer herd operators could argue that, because their herds are restricted property, they are entitled to exemption from Federal income taxes. We do not understand that these memoranda, prepared by field officials of the Department of the Interior, necessarily represent that Department's official views. Cf. *Stevens v. Commissioner*, 452 F.2d 741 (9th Cir. 1971), affg. in part and revg. in part 52 T.C. 330 (1969) and 54 T.C. 351 (1970). In any event, for the reasons stated in the text, we do not think the restricted property argument is sound.

[8]Petitioners cite Comment, "Indian Taxation: Underlying Policies and Present Problems," 59 Cal. L. Rev. 1261, 1286–1291 (1971), which discusses the need to reconcile two possible conflicting policies: (1) That exceptions to the Internal Revenue Code must be explicit, and (2) that tax-exempt Indian lands should afford maximum economic benefit to their owners. See also *Big Eagle v. United States*, 156 Ct. Cl. 665, 673–674, 300 F.2d 765, 769 (1962). We recognize the possible conflict. The cases cited in the text, however, permit tax exemption only where authorized by specific legislative language.

Indian's income derived from leasing combined parcels of allottees' lands, stating:

> If federal courts were free to create federal tax exemptions for Indians based on policy alone, the federal policy of Indian economic advancement, implicit in almost all of the many federal enactments regarding Indians, would soon have the unintended effect of exempting all Indians from all federal taxation. [Fn. ref. omitted.]

Petitioners are not exempt from Federal income taxation of their profits from the ownership and operation of the Karmun herd.

To reflect the foregoing,

*Decision will be entered for the respondent.*