Indian claims; motion for consolidation of separate claims; reconsideration of Indian Claims Commission determinations. — On January 25, 1980 the court entered the following order:
*585 Before Friedman, Chief Judge, Nichols and Smith, Judges.
Defendant’s motion to consolidate and motion for reconsideration come before this court as a result of the enactment into law of Pub. L. No. 95-280, 92 Stat. 244, on May 15, 1978 (the act). From the legislative history, it is clear that Congress intended to give the Zuni Indian Tribe an opportunity to present its claim, even though its claim would have been barred had it not been for congressional action.[1] The Indian claim now presented by the Zuni Tribe, however, overlaps the claims of other tribes. The Government contends that the overlap between the Zuni claim, docket No. 161-79L, and the Navajo claim, docket No. 229, is so substantial that, to the extent of the overlap, these two presently pending cases should be consolidated.
Defendant further asks this court to allow the trial judge to reconsider the findings of fact in docket No. 229, even though these facts have already been determined before the Indian Claims Commission (ICC). Defendant asserts that consolidation is justified since both the Zuni and Navajo cases involve common questions of fact and law.
The Zuni Tribe filed an out-of-time petition before this court on April 27, 1979, pursuant to Pub. L. No. 95-280, 92 Stat. 244 (1978), in which it claimed substantial tracts of land by aboriginal title that the ICC has already adjudged, in the proceeding under review in docket No. 229, as belonging to the Navajo. In the Government’s memorandum in support of its motions, it is argued that aboriginal title is defined as the exclusive use and occupancy of definite lands, excluding all others, from time immemorial. United States v. Santa Fe Pac. R.R., 314 U.S. 339, 345 (1941); Assiniboine Indian Tribe v. United States, 77 Ct. Cl. 347, 367-68 (1933), cert. denied, 292 U.S. 606 (1934). Therefore, two tribes cannot have aboriginal title to the same lands. Id.; Wichita & Affiliated Bands of Indians v. United States, 89 Ct. Cl. 378, 419 (1939). The defendant contends that under such circumstances, where there is a potential for double recovery, two overlapping claims should be consolidated in the interests of justice. Seminole Indians of Florida v. United States, 197 Ct. Cl. 350, 356, 455 F. 2d 539, 542 (1972).
*586 Defendant cites Seminole for the proposition that consolidation is the appropriate action in circumstances such as those now presented. In that case, plaintiff appealed the amount of the monetary award granted it by the ICC. In addressing a tangential issue raised by the Government on appeal, this court stated that it was not necessarily improper to remand the case to the ICC with orders to consolidate the Seminole claim with the overlapping claim of another tribe, when separate adjudication might result in the Government having to face the possibility of paying twice for the extinguishing of aboriginal title to the same piece of land. In that case, the court went on to admonish the Government for not having consolidated these two overlapping claims by two different Indian tribes at an earlier time, and remanded the case to the ICC with instructions to consolidate the present claim with that of the previous one.[2] The defendant contends that its present motion here is merely an attempt to comply with the precedent for consolidation established in Seminole.
The defendant asserts, therefore, that consolidation is not improper here, and that the Act of May 15, 1978, 92 Stat. 244, does not preclude it. The sections that are now in question are 2(b)(1) and 2(b)(2) of the act, which state:
(b)(1) Any award made to any Indian Tribe other than the Zuni Indian Tribe of New Mexico before, on, or after the date of the enactment of this Act, under any judgment of the Indian Claims Commission or any other authority, with respect to any lands that are the subject of a claim submitted by the [Zuni] tribe under subsection (a) shall not be considered as a defense, estoppel, or setoff to such claim, and shall not otherwise affect the entitlement to, or amount of, any relief with respect to such claim.
(2) Any award made to the [Zuni] tribe pursuant to subsection (a) shall not be considered as a defense, estoppel, or setoff to the claims pending before the Indian Claims Commission on the date of the enactment of this Act in docket 196 (filed August 3, 1951) and docket 229 (filed August 8, 1951), and shall not *587 otherwise affect the entitlement to, or amount of, any relief with respect to such claims. [Pub. L. No. 95-280, 92 Stat. 244, reprinted in [1978] 1 U.S. Code Cong. & Ad. News.]
It is the Government’s position that the above sections do not preclude consolidation and reconsideration of the facts as ascertained by the ICC in docket No. 229. It is further argued by defendant that if Congress had intended to allow for double recovery here, to the extent of the overlapping claims, or if Congress had intended to prevent consolidation of these claims, then Congress would have expressly said so. After careful examination of all the issues presented in defendant’s motions for consolidation and reconsideration, they are denied.
I.
Rule 131(a) of this court does allow for the consolidation of separate actions when there are common questions of law or fact. Yet this rule does not mandate consolidation; it merely says that the trial judge may order consolidation. In subsection (b) it is stated that "The trial judge, in furtherance of convenience or to avoid prejudice, or where separate trials will be conducive to expedition or economy, may order a separate trial of any claim, counterclaim, or third-party claim * * As can be seen from the language of this rule, the decision to consolidate is purely a discretionary one. As counsel for the Zuni Indian Tribe pointed out, consolidation of separate claims would be inappropriate where the rights of the parties would not be adequately protected or when there would be no appreciable saving of time or expense. Here, the Navajo Tribe, docket No. 229, has been in litigation since August 8, 1951, when its petition was filed. Twenty-seven years of litigation have transpired including the adjudication before the ICC of the Navajo Tribe’s claim to lands by aboriginal title that now, at least in part, are the subject of the Zuni claim. The Government now asks this court to reconsider the ICC’s finding that the Navajo did own the lands by aboriginal title that are now the subject of these overlapping claims. If the court were to take such an action, it would be necessary to reconsider all the ICC findings pertaining to all Navajo land claims. To open the door here would mandate a full reconsideration of all issues so as to prevent possible *588 prejudice against the Navajos. When considering whether consolidation is the appropriate action here, the underlying policy reasons for consolidation should be considered. As stated in Schacht v. Javits, 53 F.R.D. 321, 324 (S.D. N.Y. 1971):
While there may be questions of law common to both actions, this does not justify consolidation, particularly where, as here, parties would be prejudiced by the confusion * * * from the circumstance that the cases are in different phases of pre-trial procedures. * * * "The purpose of consolidation is to permit trial convenience and economy in administration.” [Citations omitted.] But proper judicial administration does not recommend consolidation where two actions are at such widely separate stages of preparation. * * *
In the instant case, the Navajo claim has been in litigation for 27 years. The claim by the Zuni Tribe was filed in this court only last year. To consolidate and reopen the present foundations of the Navajo litigation would result in expensive and redundant discovery procedures and needless attorneys’ fees. This court cannot agree with defendant when it says that reopening the ICC’s findings of facts in docket No. 229 would not substantially harm the rights of the Navajo, nor that consolidation would save time and expense.
II.
The Act of May 15, 1978, was intended, as stated earlier, to provide the opportunity to redress wrongs done to the Zuni Tribe, and to insure that any recovery by the Zuni was not to be defeated or reduced by an award in any other case. Sections 2(b)(1) and 2(b)(2) would seem to prohibit consolidation. Jerome K. Kuykendall, then Chairman of the Indian Claims Commission, in a letter to the Chairman of the Senate Committee on Interior and Insular Affairs, stated on May 21, 1975:
With regard to sections 2(b)(1) and (2), it is the opinion of the Commission that nothing contained therein would be detrimental to cases presently pending before the Commission. [S. REP. NO. 94-972, 94th Cong., 2d Sess. 14 (1976).]
The two sections of the act referred to specifically address the rights of the Zuni Indians in relation to other *589 tribes whose claims were already pending. Section 2(b)(1) of the act specifically states that any award made to any other Indian tribe before, on, or after the date of enactment of this act pertaining to lands that are the subject of the Zuni claim, "shall not otherwise affect the entitlement to, or amount of, any relief with respect to such claim.” (Emphasis supplied.) Specifically, Congress forbade any use of such an award to another tribe as a setoff, defense, or estoppel to the Zuni claim. Conversely, section 2(b)(2) specifically stated that any award made to the Zuni Tribe could not be used as a defense, estoppel, or setoff to the claims in docket No. 196 or docket No. 229. Docket No. 229 deals with the claims of the Navajo Tribe. Congress could not have more plainly forbidden what the Government now seeks to do.
The defendant states that in the Navajo claim there has been no "award,” since there has been no post-trial briefing on the offsets of returned lands, a decision on value, or a trial on regular gratuitous offsets. Consequently, consolidation and reconsideration is not improper. This overly narrow interpretation would ignore the specific language in section 2(b)(1) which says that the "award” can come before, on, or after the effective date of the Zuni jurisdictional act. Further, such a construction would ignore the language of the act that specifically mentions the Navajo claim in docket No. 229 as a claim that shall not be affected.
III.
It should be noted that in the legislative history cited by the various parties, the potential for double recovery for the overlapping land claims of the Navajo and the Zuni Tribes was a constant concern of the officials of the Department of Justice who quickly suggested amendments to the May 15, 1978, Act to prevent such a possibility. Two acting assistant attorneys general and Mr. Donald Milieur, Chief of the Indian Claims Section of the Land and Natural Resources Division, continuously pointed out to the various House and Senate Committees that sections 2(b)(1) and 2(b)(2) of the bill in its then form might result in a potential double recovery and that inclusion of these sections might prevent consolidation for trial of the two Indian claims. Congress did not change the language of the bill, nor did it *590 edit from the bill sections 2(b)(1) and 2(b)(2) as suggested by the Justice Department.
Considering the intensity of the effort made by the Justice Department in this particular instance, it is highly improbable that Congress was unaware of what it was doing when it retained sections 2(b)(1) and 2(b)(2) in the final version of the bill. The Government here contends that congressional "inaction” cannot be used as a factor in deciding how to interpret the sections of the May 15, 1978, Act that are now in controversy. Dodge v. United States, 176 Ct. Cl. 476, 483, 362 F. 2d 810, 814 (1966). The key word here, however, is "inaction.” Under the circumstances involved here the retention of these controversial sections of the bill could hardly be construed as "inaction,” considering the attention that the sections had received in various legislative hearings.
IV.
The defendant’s motions also put into issue the scope of this court’s review of ICC determinations. The Indian Claims Commission Act in section 20, 25 U.S.C. § 70s, authorized the court to review ICC decisions to see if the findings of the ICC were supported by substantial evidence. Under section 70s, if the determinations of the ICC were supported by substantial evidence, then the ICC findings were to be considered conclusive. In 1977 when the amendments to the Indian Claims Commission Act were passed, 25 U.S.C. § 70v-3 mandated that the transfer of cases to the United States Court of Claims would not change the scope of this court’s judicial review. In regard to partially adjudicated claims, 25 U.S.C. § 70v-3 stated that, as to those claims already litigated before the ICC, this court should review these cases subject to the restrictions in section 70s. Therefore, the ICC determination that the Navajo Tribe owned, by aboriginal title, the overlapping lands now in issue should be considered conclusive unless unsupported by substantial evidence. Defendant’s assertions that the trial judge, sitting as the successor to the ICC, could reconsider the issue of aboriginal title to these overlapping lands, regardless of 25 U.S.C. § 70s, will not stand. In 25 U.S.C. § 70v-3, the 1977 amendments to the Indian Claims Commission Act mandated that the scope of *591 this court’s review is limited still to 25 U.S.C. § 70s. Reconsideration of the ICC findings of fact in docket No. 229, other than to determine if they are supported by substantial evidence, would under these circumstances be improper.
V.
Congressional policy is clear in its intent to bring all Indian land claims to an end. Temoak Band of Western Shoshone Indians, Nevada v. United States, 219 Ct. Cl. 346, 350, 593 F. 2d 994, 996, cert. denied, 444 U.S. 973 (1979). If the Government’s motions for consolidation and reconsideration were granted, the probability is that these particular claims would not be disposed of for decades. In dealing with a similar type of situation, Judge Nichols stated in Temoak:
* * * This lawsuit has already lasted since 1951, for reasons peculiar to this type of litigation, which no one criticizes, and it appears the Temoaks contemplate cheerfully another quarter century of litigation. * * * [219 Ct. Cl. at 353, 593 F. 2d at 998.]
That comment is equally pertinent where the party contemplating litigation that might continue into the 21st century is the Government.
It is therefore Ordered, upon consideration of the parties’ submissions and other papers, but without oral argument, that defendant’s motions are denied and the cases are remanded to the trial division for further proceedings.

 124 Cong. Rec. 2958 (1978).

 In Seminole, the court stated that consolidation of the two claims was not prejudicial under the circumstances then at bar, since the claim was already going to be remanded to the ICC on other substantive issues. Seminole Indians of Florida v. United States, 197 Ct. Cl. 350, 356, 455 F. 2d 539, 542 (1972).